Justice Kennedy
delivered the opinion of the Court.
The jury in a Texas state court convicted petitioner La-Royce Lathair Smith of first-degree murder and determined he should receive a death sentence. This Court now reviews a challenge to the sentencing proceeding for a second time.
The sentencing took place in the interim between our decisions in Penry v. Lynaugh, 492 U. S. 302 (1989) (Penry I), and Penry v. Johnson, 532 U. S. 782 (2001) (Penry II). In Penry I the Court addressed the special-issue questions then submitted to Texas juries to guide their sentencing determinations in capital cases. The decision held that the Texas special issues were insufficient to allow proper consideration *300 of some forms of mitigating evidence. Following a pretrial challenge to the special issues by Smith, the trial court issued a charge instructing the jury to nullify the special issues if the mitigating evidence, taken as a whole, convinced the jury Smith did not deserve the death penalty. After Smith’s trial, Penry II held a similar nullification charge insufficient to cure the flawed special issues. Smith, on state collateral review, continued to seek relief based on the inadequacy of the special issues, arguing that the nullification charge had not remedied the problem identified in his pretrial objection. The Texas Court of Criminal Appeals affirmed the denial of relief, distinguishing Smith’s case from the Penry precedents. Ex parte Smith, 132 S. W. 3d 407 (2004).
This Court, by summary disposition, reversed. Smith v. Texas, 543 U. S. 37 (2004) (per curiam) (Smith I). On remand the Court of Criminal Appeals again denied Smith relief. It held, for the first time, that Smith’s pretrial objections did not preserve the claim of constitutional error he asserts. Under the Texas framework for determining whether an instructional error merits reversal, the state court explained, this procedural default required Smith to show egregious harm — a burden the court held he did not meet. Ex parte Smith, 185 S. W. 3d 455, 467-473 (2006). The requirement that Smith show egregious harm was predicated, we hold, on a misunderstanding of the federal right Smith asserts; and we therefore reverse.
I
A

The Special Issues

Under Texas law the jury verdict form provides special-issue questions to guide the jury in determining whether the death penalty should be imposed. At the time of Smith’s trial, Texas law set forth three special issues. The first addressed deliberateness; the second concerned future dan *301 gerousness; and the third asked whether the killing was an unreasonable response to provocation by the victim. Provocation was not applicable to Smith’s case so the third question was not included in the instructions. If the jury answered the two applicable special-issue questions in the affirmative, the death penalty would be imposed.
In Penry I, the Court held that neither of these special-issue instructions was “broad enough to provide a vehicle for the jury to give mitigating effect” to the evidence at issue in that case. Penry II, supra, at 798 (citing, and characterizing, Penry I, supra, at 322-325). We refer to the inadequacy of the special-issue instructions as “Penry error.”
For the brief period between Penry I and the Texas Legislature’s addition of a catchall special issue, Texas courts attempted to cure Penry error with a nullification charge. In Smith’s case the trial court instructed that if a juror was convinced the correct answer to each special-issue question was “yes,” but nevertheless concluded the defendant did not deserve death in light of all the mitigating evidence, the juror must answer one special-issue question “no.” The charge was not incorporated into the verdict form. See, e. g., 1 App. 123-124. In essence the jury was instructed to misrepresent its answer to one of the two special issues when necessary to take account of the mitigating evidence.
In Penry II, the Court concluded that a nullification charge created an ethical and logical dilemma that prevented jurors from giving effect to the mitigating evidence when the evidence was outside the scope of the special issues. As the Court explained, “because the supplemental [nullification] instruction had no practical effect, the jury instructions . . . were not meaningfully different from the ones we found constitutionally inadequate in Penry 532 U. S., at 798. In other words, Penry II held that the nullification charge did not cure the Penry error.
Penry II and Smith I recognized the ethical dilemma, the confusion, and the capriciousness introduced into jury delib *302 erations by directing the jury to distort the meaning of an instruction and a verdict form. Penry II, supra, at 797-802; Smith I, supra, at 45-48. These are problems distinct from Penry error and may be grounds for reversal as an independent matter; but we need not reach that issue here, just as the Court did not need to reach it in Penry II or Smith I.
When this Court reversed the Court of Criminal Appeals in Smith I, it did so because the nullification charge had not cured the underlying Penry error. See Smith I, 548 U. S., at 48 (holding that “the burden of proof. .. was tied by law to findings of deliberateness and future dangerousness that had little, if anything, to do with” the mitigating evidence). While the ethical and logical quandary caused by the jury nullification charge may give rise to distinct error, this was not the basis for reversal in Smith I. On remand the Court of Criminal Appeals misunderstood this point. Its interpretation of federal law was incorrect.
In light of our decision in Smith I, our review of the facts need not restate the brutality of the murder Smith committed or the evidence he offered in mitigation. See id., at 38-43. We need only address the conclusion of the Court of Criminal Appeals that the constitutional error asserted by Smith was caused by the nullification charge and that, having failed to alert the trial court to that error, Smith was required to demonstrate egregious harm to obtain relief.
B

The Trial

Before voir dire, Smith filed three written motions addressing the jury instructions. In the first, he argued that Jurek v. Texas, 428 U. S. 262 (1976), and Penry I established the constitutional inadequacy of the special issues. The motion maintained that Texas law denied the trial cotut power to cure the problem because “[t]he exclusive methodology for submission to the jury of special issues with regard to infliction of the death penalty [is] contained in” Article 37.071 of *303 the Texas Code of Criminal Procedure Annotated (Vernon 2006 Supp. Pamphlet), which did not authorize the trial court to add an additional special issue on mitigation. 1 App. 9. The trial court, the objection stated, would not be able to provide “any instruction with regard to mitigating evidence which would permit the jury to make a moral reasoned response to” mitigating evidence not covered by the special issues. Ibid. Smith would offer such evidence.
The second pretrial motion raised a related but distinct argument. Smith began by noting that in Jurek the Supreme Court had found Article 37.071 constitutional on its face. He argued, however, it did so with the understanding that the Texas courts would give broad construction to terms in the special issues such as “‘deliberately.’” 1 App. 12. They had not done so and therefore “[t]here [was] no provision in Texas for the jury to decide the appropriateness of the death penalty taking into consideration the personal moral culpability of the [defendant balanced by mitigating evidence which is not directly or circumstantially probative in answering the special issues.” Id., at 13. Smith therefore reasoned that Article 37.071 was unconstitutional.
The third pretrial motion asked the court to state the contents of the mitigation charge prior to voir dire so Smith could exercise his jury challenges intelligently. Id., at 17-19.
The trial court denied the first two motions. Id., at 21. In response to the third it provided Smith a copy of its proposed mitigation charge. That charge, which we will refer to as “the nullification charge,” defined mitigating evidence broadly before explaining to the jury, in relevant part:
“[I]f you believe that the State has proved beyond a reasonable doubt that the answers to the Special Issues are ‘Yes,’ and you also believe from the mitigating evidence, if any, that the Defendant should not be sentenced to death, then you shall answer at least one of the Special Issues ‘No’ in order to give effect to your belief that the *304 death penalty should not be imposed due to the mitigating evidence presented to you. In this regard, you are further instructed that the State of Texas must prove beyond a reasonable doubt that the death sentence should be imposed despite the mitigating evidence, if any, admitted before you.” Smith I, supra, at 40 (internal quotation marks omitted).
The nullification charge did not define or describe the special issues. 1 App. 105-110. The judge told counsel: “If you see something in that charge that you’d like worded differently or you think could be made clearer or better, I’m always willing to entertain different wording or different ways of putting the idea. So if you come up with something you like better, just let me know and I’ll look at it.” Id., at 21. Smith raised no additional objection and did not suggest alternative wording for the nullification charge.
The jury received the nullification charge from the judge, but the verdict form did not incorporate it. The form was confined to the special issues of deliberateness and future dangerousness. Id., at 123-124. The jury unanimously answered “yes” to both special-issue questions, and Smith was sentenced to death.
C

Post-Trial Proceedings

The State does not contest the validity of Smith’s challenge to the special issues in his pretrial motion. It does contend that since Smith did not object to the nullification charge, his state habeas petition rests on an unpreserved claim, namely, that the nullification charge excluded his mitigating evidence. The State’s formulation of the federal right claimed by Smith, a formulation accepted by the Court of Criminal Appeals, is based on an incorrect reading of federal law and this Court’s precedents. Considering Smith’s first two pretrial motions together, as the trial court did, it *305 is evident Smith’s objection was that the special-issue framework violated the Eighth Amendment because it prevented the court from formulating jury instructions that would ensure adequate consideration of his mitigating evidence. This framework failed because the special issues were too narrow, the trial court was unable to promulgate a new catchall special issue, and the Texas courts did not define “deliberately” in broad terms. The State is correct that this was an objection based on Penry error, not one based on the confusion caused by the nullification instruction.
A review of Smith’s post-trial proceedings shows that the central argument of his habeas petition, and the basis for this Court’s decision in Smith I, is the same constitutional error asserted at trial.
1

Direct Appeal

On direct appeal from the trial court, Smith renewed his argument that the special issues were unconstitutional:
“[I]n [Penry I], the Supreme Court held that there was an Eighth Ame[n]dment violation where there was mitigating evidence not relevant to the special verdict questions, or that had relevance to the defendant’s moral culpability beyond the scope of the special verdict questions, and the jury instructions would have provided the jury with no vehicle for expressing its reasoned moral response to that evidence.
“By its extremely narrow interpretation of the requirements of Penry, this Court has unconstitutionally narrowed the sentencer’s discretion to consider relevant mitigating evidence .... The special issues ... do not in reality provide a vehicle for individualized consideration of the appropriateness of assessment of the death penalty and [the article establishing them] is unconstitutional as applied.” 1 App. 133-134.
*306 Both the Court of Criminal Appeals, in its most recent opinion, and the State, in its brief on direct appeal, recognized Smith’s pretrial motions preserved this argument. 185 S. W. 3d, at 462, and n. 9 (holding Smith’s direct-appeal argument that “the jury was unable to give effect to his mitigating evidence in answering the special issues” was “based upon his pretrial motion”); Brief for Texas in No. 71,333 (Tex. Grim. App.), p. 62, Record 674 (“[Smith] reiterates his [pretrial] claim that the statute is unconstitutional as applied since it fails to provide an effective vehicle for the jury to apply mitigating evidence”).
In its opinion affirming the sentence on direct review the Court of Criminal Appeals held that the “instruction complied with Penry and provided a sufficient vehicle for the jury to consider any mitigating evidence [Smith] offered.” Smith v. State, No. 71,333 (June 22,1994), p. 11, 1 App. 147.
2

First and Second State Habeas

In 1998, Smith sought state habeas relief. Under state law the petition was untimely. The Court of Criminal Appeals, over a dissent, rejected an argument that neglect by Smith’s counsel merited equitable tolling. Ex parte Smith, 977 S. W. 2d 610 (1998) (en banc); see id., at 614 (Overstreet, J., dissenting). Texas then amended its filing rules to allow the exception the Court of Criminal Appeals had declined to create. The statutory change permitted Smith to file for habeas relief.
Smith filed his second habeas petition before this Court’s decision in Penry II. He argued once more that the special issues were inadequate: “In Penry [I], the Supreme Court... held that the former Texas capital sentencing statute did not provide an adequate vehicle for expressing its reasoned moral response to [mitigating] evidence in rendering its sentencing decision.” Application for Writ of Habeas *307 Corpus Pursuant to Section 4A of Article 11.071 of the Texas Code of Criminal Procedure in No. W91-22808-R(A) (Tex. Crim. App.), p. 191, Record 193 (internal quotation marks omitted). Smith acknowledged the trial court tried to solve the problem with the nullification charge, but he explained that “[i]t confounds common sense to suggest jurors — who are sworn to tell the truth — would ever understand that they were authorized to answer [special-issue] questions falsely.” Id., at 193, Record 195. Smith continued:
“Nothing in the special issues themselves linked the ‘nullification’ instruction to the specific questions asked; nothing in the special issues themselves authorized the jury to consider mitigating evidence when answering the questions; nothing in the special issues themselves authorized the jury to answer the questions ‘no’ when the truthful answer was ‘yes’; in short, nothing in the special issues permitted the jury to apply the ‘nullification’ instruction.” Id., at 194, Record 196.
Smith conceded he had not objected to the nullification charge but confirmed that he had challenged the special-issues statute and that the Court of Criminal Appeals had reached the merits of this claim on direct review.
The State, relying upon a procedural bar different from and indeed contradictory to the one it now raises, responded that “[t]his claim [was] procedurally barred as it was both raised and decided on the merits on direct appeal.” 1 App. 156; see also id., at 157 (describing Smith’s position as an “identical complaint” and an “identical argument” to his claim on direct appeal). The State contended, in the alternative, that Smith’s position was meritless because the nullification charge cured any problem with the special issues. Respondent’s Original Answer and Response to Applicant’s Application for Writ of Habeas Corpus in No. W9122803-R(A) (Tex. Crim. App.), pp. 136-139, Record 467-470.
*308 The state trial court denied habeas relief on the ground Smith was procedurally barred from raising the same claim denied on direct review absent “a subsequent change in the law so as to render the judgment void . . ." Ex parte Smith, No. W91-22803-R, pp. 86-87 (265th Dist. Ct. of Dallas Cty., Tex., Apr. 5, 2001).
3

Appeal from the Denial of State Habeas Relief

While Smith’s appeal from the state trial court’s denial of his second habeas petition was pending, this Court decided Penry II. Smith filed a brief in the Court of Criminal Appeals explaining the relevance of Penry II to his habeas claim. He noted that the special-issue questions in his case were for all relevant purposes the same as those in Penry II. Applicant’s Brief for Submission in View of the United States Supreme Court’s Opinion in Penry v. Johnson in No. W91-22803-R, pp. 4-5. He maintained the nullification charges were also indistinguishable, id., at 5-6, and had in Penry II been held insufficient “to cure the error created by the Special Issues,” Applicant’s Brief for Submission, at 6-7. Smith concluded by explaining that the procedural bar for raising an issue already resolved on direct review did not apply “where an intervening legal decision renders a previously rejected claim meritorious.” Id., at 12 (citing Ex parte Drake, 883 S. W. 2d 213, 215 (Tex. Crim. App. 1994) (en banc)). (We note the Court of Criminal Appeals recently adopted this position. See Ex parte Hood, 211 S. W. 3d 767, 775-778 (2007).)
The Court of Criminal • Appeals ordered supplemental briefing on the relevance of Penry II. Given that Penry II addressed the sufficiency of a nullification charge as a cure for inadequate special issues, Smith’s supplemental brief concentrated on the same issue. Nevertheless, his central argument remained that he “presented significant mitigating evidence that was virtually indistinguishable from Penry’s *309 and thus undeniably beyond the scope of the special issues.” Applicant’s Supplemental Briefing on Submission in No. 74,228, p. 12 (hereinafter Applicant’s Supp. Briefing). The nullification charge was inadequate as well, in his view, because, based on the ethical dilemma, “there is a reasonable probability that the nullification instruction . . . precluded [a juror who found that Smith’s personal culpability did not warrant a death sentence] from expressing that conclusion.” Id., at 13. Alternatively, Smith argued he was “also entitled to relief under Penry IF’ because “[e]ven if the jury might have been able to give effect to some of [his] mitigating evidence within the scope of [the] special issues, the confusing nullification instruction itself” may have prevented the jury from doing so. Id., at 14. As such, the nullification charge was “worse than no instruction at all.” Id., at 15-16 (emphasis deleted).
The State responded that the special issues were adequate and, furthermore, that the nullification charge, unlike the charge in Penry II, cured any problem. State’s Brief in No. 74,228 (Tex. Crim. App.), pp. 2-11. In response to Smith’s second argument the State contended “it tests the bounds of reason to grant [Smith] relief based on a good-faith attempt to give him a supplemental instruction to which he was not constitutionally entitled.” Id., at 11. In reply Smith reiterated his two distinct arguments, devoting most of the brief to his original trial objection. Applicant’s Reply to Respondent’s Response to Applicant’s Brief for Submission in No. 74,228 (Tex. Crim. App.).
The Court of Criminal Appeals denied the habeas petition. It found no Penry error, reasoning that the special issues were adequate to consider the mitigating evidence. Ex parte Smith, 132 S. W. 3d, at 412-415. Any evidence excluded from the purview of the jury, the court indicated, was not “constitutionally significant.” Id., at 413, n. 21. In the alternative the court held the nullification charge and the argument at trial were distinguishable from those at issue in *310 Penry II. In Smith’s case, the court reasoned, the nullification charge would have been an adequate cure even if the special issues were too narrow. 132 S. W. 3d, at 416-417.
The majority did not adopt or address the reasoning of the two concurring opinions, which argued that Smith had procedurally defaulted his “Penry II claim” because while he had objected to the special issues at trial, he had not objected separately to the nullification charge. Id., at 423-424 (opinion of Hervey, J.); id., at 428 (opinion of Holcomb, J.).
4

Smith I

The ruling of the Court of Criminal Appeals in Smith’s second state habeas proceeding was reversed by this Court in Smith I. The Court’s summary disposition first rejected as unconstitutional the Texas court's screening test for “constitutionally significant” evidence. 543 U. S., at 43-48; see also Tennard v. Dretke, 542 U. S. 274 (2004).
The Smith I Court next observed that although Smith had presented relevant mitigating evidence, the jury’s consideration was “tied by law to findings of deliberateness and future dangerousness that had little, if anything, to do with” that evidence. 543 U. S., at 45, 48. There was, in other words, a Penry error. As a final matter, despite differences between the nullification charges in Smith 1 and Penry II, the variances were “constitutionally insignificant” because “Penry II identified a broad and intractable problem.” 543 U. S., at 46, 47 (citing Penry II, 532 U. S., at 799-800). The nullification charge was therefore inadequate under Penry II. The judgment was reversed and the case remanded. 543 U. S., at 48-49.
5

Remand Following Smith I

On remand Smith’s brief urged that harmless-error review was inappropriate because under the nullification charge the *311 jury proceedings became capricious. See Applicant’s Brief on Remand in No. 74,228 (Tex. Crim. App.), pp. 8-18. The State responded that Smith was procedurally barred because he waited to raise his allegation of “jury charge error” under Penry II until the second state habeas petition nine years after his conviction. State’s Brief on Remand in No. 74,228 (Tex. Crim. App.), pp. 1, 2 (hereinafter State’s Brief on Remand). The State maintained this was an adequate and independent state ground for denying relief. Ibid. Smith’s motion and direct appeal, the State said, had been based on a challenge to the statute setting forth the special issues, not to the jury charge. Id., at 5-6. The State also maintained that this Court had not addressed whether the special issues were “a sufficient vehicle for the jury to give effect to [Smith’s] mitigation evidence.” Id., at 12-16.
Smith replied to the procedural-bar argument by noting he had “consistently raised his claim regarding the inadequacy of the special issues to permit constitutionally adequate consideration of his mitigating evidence and this Court has consistently addressed the merits of [that] claim.” Applicant’s Reply Brief on Remand in No. 74,228 (Tex. Crim. App.), p. 1.
The Court of Criminal Appeals denied relief. The court’s confusion with the interplay between Penry I and Penry II is evident from the beginning. Reasoning that “[t]he Supreme Court did not address our conclusion that the two special issues provided [Smith’s] jury with a constitutionally sufficient vehicle to give effect to his mitigating evidence,” 185 S. W. 3d, at 463 (internal quotation marks omitted), the court again concluded that the special issues were adequate, id., at 464-467. Nevertheless, because of its “uncertainty” regarding this Court’s Penry II jurisprudence, the Court of Criminal Appeals went on to “assume, for the sake of argument, that at least some of [Smith’s] evidence was not fully encompassed by the two special issues” and that “the jury *312 charge in this case was constitutionally deficient under Penry 77.” 185 S. W. 3d, at 467.
The Court then applied the framework of Almanza v. State, 686 S. W. 2d 157 (Tex. Crim. App. 1984) (en banc), to Smith’s claim of error. Under Almanza, Smith needed first to show instructional error. Having assumed Smith had done so, the court next asked whether the error was preserved for review. If so, Smith would need to establish some “actual,” not merely theoretical, harm resulting from the error. If Smith had not preserved the error, by contrast, he would need to establish not merely some harm but also that the harm was egregious. 185 S. W. 3d, at 467.
The court found Smith had not preserved his claim of instructional error. Smith’s only objection at trial, reasoned the state court, was that the statute authorizing the special issues was unconstitutional in light of Penry I. 185 S. W. 3d, at 461-462, and n. 8. This objection did not preserve a challenge to the nullification charge based on Penry II, so Smith was required to show egregious harm. That showing had not been addressed by this Court’s holding in Smith I, the Court of Criminal Appeals indicated, because this Court only required that Smith demonstrate a reasonable probability of harm. In the view of the Court of Criminal Appeals there was little likelihood that Smith’s jury had failed to consider the mitigating evidence. 185 S. W. 3d, at 468-473. On this basis the court concluded Smith had failed to show egregious harm and, as such, habeas relief was foreclosed.
We granted certiorari. 549 U. S. 948 (2006).
II
A
The special issues through which Smith’s jury sentenced him to death did not meet constitutional standards, as held in Penry I; and the nullification charge did not cure that error, as held in Penry II. This was confirmed in Smith I. The Court of Criminal Appeals on remand denied relief, *313 nonetheless, based on two determinations: first, that Smith’s federal claim was not preserved; second, as a result, that Smith was required by Almanza to show egregious harm. As a general matter, and absent some important exceptions, when a state court denies relief because a party failed to comply with a regularly applied and well-established state procedural rule, a federal court will not consider that issue. Ford v. Georgia, 498 U. S. 411, 423-424 (1991).
Smith disputes that the application of Almanza on state habeas review is a “firmly established and regularly followed state practice.” James v. Kentucky, 466 U. S. 341, 348-349 (1984). The State argues it is. We may assume the State is correct on this point, for in our view the predicate finding of procedural failure that led the Court of Criminal Appeals to apply the heightened Almanza standard is based on a misinterpretation of federal law.
The State and the Court of Criminal Appeals read Smith I as having reversed because the nullification charge “prevented giving effect to [Smith’s] mitigating evidence because it placed the jurors in an unconstitutional ethical quandary.” Brief for Respondent 28. It is true Smith’s second state habeas petition included an argument that the nullification charge itself prevented the jury from considering his mitigating evidence. This, however, was not the only, or even the primary, argument he presented to the Court of Criminal Appeals and this Court. As detailed above, Smith’s central objection at each stage has been to the special issues.
In Smith I, this Court agreed the special issues were inadequate and so reversed the Court of Criminal Appeals. In challenging the special issues Smith did contend that the nullification charge was flawed. This Court engaged in much the same analysis. That analysis was only necessary, however, because the Court of Criminal Appeals had twice rejected Smith’s claim of Penry error based on the mistaken idea that “regardless of whether [Smith’s] mitigating evidence was beyond the scope of the two statutory special is-
*314 sues, the judge’s extensive supplemental [nullification] instruction provided a sufficient vehicle for the jury to consider all of [Smith’s] mitigating evidence.” Ex parte Smith, 132 S. W. 3d, at 410. In other words, Smith argued, and this Court agreed, that the special issues prevented the jury from considering his mitigating evidence; and the nullification charge failed to cure that error. In its opposition to certiorari in Smith I, the State understood that under Penry II it was the special issues, not the nullification charge, that created the error. See Brief in Opposition in Smith v. Texas, O. T. 2004, No. 04-5323, p. 17 (“In essence, the [nullification] instruction did not create new error; rather, the instruction simply failed to correct the error identified in Penry F).
The Court of Criminal Appeals’ mistaken belief that Penry II, and by extension Smith I, rested on a separate error arising from the nullification charge may have stemmed from Smith’s use of the term “Penry II error” in his supplemental brief and from this Court’s citation to Penry II, rather than Penry I, in Smith I. Applicant’s Supp. Briefing 11. Smith’s labeling of the claim in his supplemental brief, however, did not change its substance. See Ex parte Caldwell, 58 S. W. 3d 127, 130 (Tex. Crim. App. 2000); Rawlings v. State, 874 S. W. 2d 740, 742 (Tex. App. Fort Worth 1994). And this Court’s reference to Penry II, rather than Penry I, has been explained above. As the parties’ post-trial filings, the state courts’ judgments, and this Court’s decision in Smith I make clear, Smith challenged the special issues under Penry I at trial and did not abandon or transform that claim during his lengthy post-trial proceedings.
After Smith I, the State argued for the first time that Smith’s pretrial motions, and his argument on direct appeal, raised a “statutory” complaint about the entire Texas death penalty scheme different from his current theory. State's Brief on Remand 6. The State expanded on that claim in its arguments to this Court, in which it suggested Smith made a strategic decision to launch a broad attack on the state sys *315 tem rather than attempt to obtain adequate instructions in his own case. Brief for Respondent 28, 32-33; Tr. of Oral Arg. 40. Regardless of how the State now characterizes it, Smith’s claim was treated by the Court of Criminal Appeals as a Penry challenge to the adequacy of the special issues in his case, and that is how it was treated by this Court in Smith 1.
The Court of Criminal Appeals on remand misunderstood the interplay of Penry I and Penry II, and it mistook which of Smith’s claims furnished the basis for this Court’s opinion in Smith I. These errors of federal law led the state court to conclude Smith had not preserved at trial the claim this Court vindicated in Smith I, even when the Court of Criminal Appeals previously had held Smith’s claim of Penry error was preserved. The state court’s error of federal law cannot be the predicate for requiring Smith to show egregious harm. Ake v. Oklahoma, 470 U. S. 68, 75 (1985).
B
Under Almanza, once Smith established the existence of instructional error that was preserved by a proper objection, he needed only to show he suffered “some harm” from that error. In other words, relief should be granted so long as the error was not harmless. 686 S. W. 2d, at 171. It would appear this lower standard applies to Smith’s preserved challenge to the special issues.
The Court of Criminal Appeals explained in its recent decision in Penry v. State, 178 S. W. 3d 782 (2005), that once a state habeas petitioner establishes “a reasonable likelihood that the jury believed that it was not permitted to consider” some mitigating evidence, he has shown that the error was not harmless and therefore is grounds for reversal. Id., at 786-788 (citing Boyde v. California, 494 U. S. 370 (1990)). We note that the Court of Criminal Appeals stated in dicta in this case that even assuming Smith had established that there was a reasonable probability of error, he had not shown *316 “‘actual’ harm,” 185 S. W. 3d, at 468, and therefore would not even satisfy the lower Almanza standard. We must assume that this departure from the clear rule of Penry v. State resulted from the state court’s confusion over our decision in Smith I.
The Court of Criminal Appeals is, of course, required to defer to our finding of Penry error, which is to say our finding that Smith has shown there was a reasonable likelihood that the jury interpreted the special issues to foreclose adequate consideration of his mitigating evidence. See Johnson v. Texas, 509 U. S. 350, 367 (1993). Accordingly, it appears Smith is entitled to relief under the state harmless-error framework.
* * Hs
In light of our resolution of this case, we need not reach the question whether the nullification charge resulted in a separate jury-confusion error, and if so whether that error is subject to harmless-error review.
For the reasons we have stated, the judgment of the Court of Criminal Appeals is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered.