IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 15, 2007

Charles R. Fulbruge III
Clerk

No. 03-11097

Fernando Garcia

Petitioner-Appellant

v.

Nathaniel Quarterman, Director, Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:01-CV-580

Before JONES, Chief Judge, and BENAVIDES and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Petitioner Fernando Garcia appealed the district court's denial of his

habeas corpus petition, and this court previously denied relief.  Because recent

decisions from the Fifth Circuit and the Supreme Court establish that Garcia's

Eighth Amendment rights were violated by the trial court's failure to present to

the sentencing jury an adequate vehicle to give meaningful mitigating effect to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

his history of substance abuse and an abused childhood, we grant Garcia's motion for rehearing, vacate the prior panel opinion, reverse the district court's decision, and remand with instructions to grant habeas relief.

The following opinion is substituted for the panel's prior opinion, reported at 456 F.3d 463 (5th Cir. 2006).

## I. BACKGROUND

With extraordinary cruelty, Garcia sexually abused and murdered a three-year-old girl in 1987.[1] Garcia was convicted of murder by a Texas jury and sentenced to death on December 9, 1989. His conviction was affirmed in the state courts and certiorari was denied by the U.S. Supreme Court. After exhausting his state court habeas remedies, Garcia filed a federal habeas petition in 2001. He argued, inter alia, that the trial court violated his Eighth Amendment rights because the "special issue" jury instructions given at the punishment phase of the trial prevented the jury from considering and giving full effect to his mitigating evidence. The district court denied Garcia's petition for writ of habeas corpus but granted him a Certificate of Appealability. This court denied relief in a divided ruling.

---

[1] For the facts surrounding this heinous crime see Garcia v. State, 887 S.W.2d 846, 849-50 (Tex. Crim. App. 1994).

While Garcia's petition for rehearing was pending, in a separate case our court held en banc that the relevant inquiry in these cases is "whether there was a reasonable likelihood that the jury would interpret the Texas special issues in a manner that precluded it from fully considering and giving full effect to all of the defendant's mitigating evidence." Nelson v. Quarterman, 472 F.3d 287, 293 (5th Cir. 2006). Shortly thereafter, the Supreme Court handed down two decisions on this same question. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654 (2007); Brewer v. Quarterman, 127 S. Ct. 1706 (2007). In Abdul-Kabir, the Supreme Court synthesized its various rulings on the Texas special issues to explain that its precedent "firmly established that sentencing juries must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offenses in the future." 127 S. Ct. at 1664. In light of these recent authorities, we re-evaluate Garcia's appeal.

Garcia's case in mitigation in the trial court rested on his background and character. A psychiatrist who examined Garcia for the purposes of assessing his future danger to the community testified that he did not have a stable, nurturing family and was poorly educated. He also had a long history of drug abuse,

3

including using inhalants which can induce psychotic behavior and lead to permanent neurological damage. Indeed, the jury heard testimony from Garcia's neighbor who stated that she saw him sniff paint and molest a small girl while he was high.

Finally, another doctor testified about Garcia's background and pedophilia. He described what information Garcia relayed to him about his disturbing childhood: raised by his grandmother who exposed him to witchcraft and other odd practices; drugged by his mother so he would have sex with her and her boyfriend; forced to perform oral sex at the age of five on a friend of his brother's and at six on his brother; forced to perform oral sex at the age of eight on a fourteen-year-old female cousin; and sexually abused by a nun. Although he could not verify the veracity of these stories,[2] the doctor described how this sort of childhood could cause pedophilia in an adult. Garcia also admitted to the doctor that he had sexually abused another young girl, who was five years old. The doctor clinically diagnosed Garcia as a dangerous pedophile who would probably molest children again if given the opportunity.

---

[2] The trial court did not reach the question whether this testimony was inadmissible hearsay, because the state did not object to it.

4

The jury received written instructions from the trial court designed to allow it to give effect to the mitigating evidence. The Charge of the Court in the sentencing phase set forth the Texas special issues and instructed the jury to answer "yes" or "no" to each one, applying the reasonable doubt standard. Special Issue No. 1 reads: "Was the conduct of the defendant that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?" The instructions defined "deliberately" for the jurors: "Deliberately is not linguistically equivalent to intentionally and is more than intentionally and less than premeditated; it is a conscious decision involving a thought process which embraces more than mere will to engage in conduct." Special Issue No. 2 reads: "Is there a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?"

The court also informed the jury through a "nullification instruction" that it could answer "no" to the special issues, even if the proper answer were "yes":

> You are instructed that you shall consider any evidence which, in your opinion, mitigates against the imposition of the death penalty. In making this determination you shall consider any aspects of the defendant's background, character or record and the facts and circumstances of the offense. If you believe from the evidence that the State has proven beyond a reasonable doubt that the answers to the Special Issues are "Yes," but you are further persuaded by the

mitigating evidence that the defendant should not be sentenced to death in this case, or you have a reasonable doubt as to whether the death penalty should be imposed against the defendant, then you shall answer one or both of the Special Issues "No" in order to give effect to your belief that the death penalty should not be imposed in this case. Mitigating circumstances are circumstances which do not constitute a justification or excuse for the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability.

The jury answered "yes" to the special issues and the court sentenced Garcia to death.

## II. LEGAL STANDARDS

"In reviewing a ruling on the merits of a habeas claim, the district court's findings of fact are reviewed for clear error; its conclusions of law, de novo." Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir. 2003). The Antiterrorism and Effective Death Penalty Act of 1996 supplies the proper standards for reviewing the state court ruling. See 28 U.S.C. § 2254. See also Jones v. Dretke, 375 F.3d 352, 353-54 (5th Cir. 2004). As to legal issues, the statute provides that the habeas corpus petition should not be granted unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[A] state-court decision is . . . contrary to [the Supreme] Court's precedent if the state

court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's] . . . ." Williams v. Taylor, 529 U.S. 362, 405 (2000). "A state court decision constitutes an unreasonable application of clearly established law if the 'state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case.'" McCall v. Dretke, 390 F.3d 358, 363 (5th Cir. 2004) (quoting Taylor, 529 U.S. at 407-08). "[F]ederal habeas courts must deny relief that is contingent upon a rule of law not clearly established at the time the state conviction becomes final." Peterson v. Cain, 302 F.3d 508, 511 (5th Cir. 2002).

## III. DISCUSSION

The Supreme Court has dictated "that a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigate against imposing the death penalty." Penry v. Lynaugh, 492 U.S. 302, 318 (1989) (hereinafter Penry, or Penry I). Specifically, in Penry, the Supreme Court found that the Texas special issues may not have permitted the jury to give adequate effect to "the mitigating evidence of Penry's mental retardation and history of

7

abuse." 492 U.S. at 323. In Abdul-Kabir, the Court interpreted Penry to require that juries be permitted to give "meaningful effect" to almost all types of mitigating evidence. 127 S. Ct. at 1675.

## A. The Nullification Instruction

To correct the special issues' inadequacies identified by the Supreme Court in Penry I, Texas courts temporarily adopted a "nullification instruction," like the one presented to the jurors in the instant case. Such an instruction permits the jurors to answer "no" to one of the special issues, even though the proper answer is "yes," if they nonetheless believe that the death penalty is not warranted. In Penry II, the Supreme Court found this innovation insufficient. See Penry v. Johnson, 532 U.S. 782, 798-804 (2001).

The Court identified two flaws in the special issues nullification instruction in Penry II. First, it reasoned that the instruction could be read as a gloss on the special issues, rather than as a vehicle to override them. See id. at 798. Thus, the jury might have believed that it was still required to give "truthful answers to each special issue," even in light of other mitigating factors. Id.[3] Second, even if the jury did properly understand the nullification

---

[3] The instruction Justice O'Connor complained of as ambiguous in Penry II read, in part, "If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence,

instruction as allowing it to override the special issues, it was in a position where "it would have been both logically and ethically impossible for a juror to follow both sets of instructions." Id. at 799.

The instruction in the instant case was different from the instruction the Court held unconstitutional in Penry II. For instance, the instruction to Garcia's jury did not contain the language that Justice O'Connor worried could "be understood as telling the jurors to take Penry's mitigating evidence into account in determining their truthful answers to each special issue." Id. at 798. Rather, the jury instructions here state clearly that, even "[i]f you believe . . . that the answers to the Special Issues are 'Yes,'" you "shall answer one or both of the Special Issues 'No' in order to give effect to your belief that the death penalty should not be imposed in this case" (emphasis added).

However, the nullification instruction here still has the second flaw identified in Penry II – it requires jurors to answer a special issue untruthfully in order to give effect to the mitigating evidence. See id. at 802. Although "[a] clearly drafted catchall instruction on mitigating evidence . . . might have complied with Penry I," in this case, "jurors . . . [still] had to answer the special

---

is an appropriate response to the personal culpability of the defendant, a negative finding should be given to one of the special issues." 532 U.S. at 798-99 (emphasis in original; quotations omitted).

issues dishonestly in order to give effect to . . . mitigating evidence." Id. at 802-03. Thus, the trial court's additional "'clarification' provided no real help." Id. at 802.[4]

Furthermore, the trial court's clarification of the word "deliberately" did not permit the jurors to give effect to any additional mitigating evidence. Indeed, the court's definition of "deliberately," provided above, is less than artful. And, in any event, the instruction simply did not "defin[e] the term . . . 'in a way that would clearly direct the jury to consider fully [petitioner's] mitigating evidence as it bears on his personal culpability.'" Id. at 803 (quoting Penry I, 492 U.S. at 323).

Thus, in order for us to find that the jury had the opportunity to give meaningful effect to Garcia's mitigating evidence, we must determine that the two special issues, standing alone, are constitutionally sufficient.

---

[4] Both the Supreme Court and this Circuit have indicated in recent opinions that requiring jurors to return false answers in order to give effect to mitigating evidence violates the defendant's constitutional rights. See Smith v. Texas, 543 U.S. 37, 48 (2004); Bigby v. Dretke, 402 F.3d 551, 572 (5th Cir. 2005) (stating that "even if the jur[ors] understood the instruction as directing them to 'nullify' their answers to the special issues, they still would have faced the ethical dilemma of violating their oath to render a 'true verdict' by providing false answers to the special issues in order to give effect to Bigby's mitigating evidence and comply with the supplemental instruction").

B. Garcia's Mitigating Evidence

For the sake of clarity, we divide the mitigating evidence presented by Garcia at the sentencing hearing into three categories: (1) evidence of Garcia's "good character"; (2) evidence of substance abuse; and (3) evidence of neglect and abuse during childhood.[5]

For evidence of good character, the jury could have considered Garcia's claim that he was a born-again Christian and the fact that during previous incarcerations he had not been responsible for any serious disciplinary violations. The law on this issue is clear. Abdul-Kabir did not alter the Supreme Court's ruling in Franklin v. Lynaugh that evidence of good character can be given sufficient mitigating effect by the second special issue. See Franklin v. Lynaugh, 487 U.S. 164, 177-78 (1988); accord Graham v. Collins, 506 U.S. 461, 466 (1993).

The same cannot be said for Garcia's evidence of substance abuse in light of Abdul-Kabir and Brewer. It is possible Garcia's substance abuse could have been given some mitigating effect under the first special issue. Garcia claimed

---

[5] Garcia also argues that his pedophilia may be considered mitigating of his moral culpability. We reject this argument. In contrast to the abuse Garcia himself suffered as a child, pedophilia is not a mitigating personal characteristic and does not meet even the low threshold of relevance set by Tennard v. Dretke, 542 U.S. 274, 284-85 (2004).

11

that he had a long history of substance abuse and often committed his sex crimes when he was high. It appears that Garcia was in a narcotic-induced, altered state when he murdered his victim. The jury could have found that the drugs prevented Garcia from having the deliberative state necessary for it to answer "yes" to the first special issue. Nevertheless, Garcia's substance abuse might also have had "meaningful mitigating relevance beyond its tendency to disprove that [Garcia] acted deliberately." Coble v. Quarterman, 496 F.3d 430, 447 (5th Cir. 2007).

Likewise, the possibility that Garcia's substance abuse might function as a "two-edged sword" in the minds of the jury renders the special issues insufficient. See Brewer, 127 S. Ct. at 1712 n.5, 1714. If the jury believed Garcia could stem his substance abuse, it could have found him to be less of a future danger under the second special issue. On the other hand, a jury convinced that Garcia's habitual substance abuse made him all the more dangerous would be left without an alternate vehicle for considering whether it nonetheless made him less culpable. See Coble, 496 F.3d at 447-48.

The same is true of Garcia's evidence of his abused childhood. The Supreme Court has conclusively stated that childhood abuse cannot be given meaningful mitigating effect under the special issues. The sort of childhood

abuse in Garcia, if believed, has meaningful similarities to that suffered by Penry. In Penry I, the Court found that the Texas special issues did not permit the jury to give proper mitigating effect to the defendant's "abused background." 492 U.S. at 315. The Court described the evidence of this abuse as follows: "Penry's sister testified that their mother had frequently beaten him over the head with a belt when he was a child. Penry was also routinely locked in his room without access to a toilet for long periods of time." Id. at 309. The abuse described in Penry I is sufficiently similar in mitigating effect to Garcia's such that the trial court, having the benefit of the Supreme Court's recent Penry I opinion, should have given it independent mitigating effect. See also Brewer, 127 S. Ct. at 1712 n.5, 1714 (noting that evidence of an abused childhood could be "two-edged").

Further, the Penry I Court treated Penry's history of abuse as something with independent mitigating effect:

> Penry argues that his mitigating evidence of mental retardation and childhood abuse has relevance to his moral culpability beyond the scope of the special issues, and that the jury was unable to express its "reasoned moral response" to that evidence in determining whether death was the appropriate punishment. We agree. Thus, we reject the State's contrary argument that the jury was able to consider and give effect to all of Penry's mitigating evidence in answering the special issues without any jury instructions on mitigating evidence.

13

492 U.S. at 322 (emphasis added). At no point in the opinion does the Court remark that it is only because Penry is mentally retarded that his past history of abuse was not given sufficient mitigating effect under the special issues. Abdul Kabir confirms this as the "clearly established" law enunciated by Penry I.

In light of Penry I and II, Abdul-Kabir and Brewer, the state court's ruling that the special issues in this case were constitutionally sufficient was contrary to the Supreme Court's precedent or, alternatively, an unreasonable application of clearly established law.

The original majority opinion in this case determined that Garcia could not avail himself of Penry-related arguments concerning his background because he did not argue to the jury for mercy and, in fact, foreswore seeking "mercy." In light of the conclusiveness with which the Court has now rejected limitations on the Penry doctrine and has declared as "clearly established law" only those limitations embodied in the facts of specific cases,[6] we must retract our earlier view. A juror who credited Garcia's evidence of an abused background and believed that his childhood, or his substance abuse, made him less culpable could

---

[6] See Abdul-Kabir, 127 S. Ct. at 1667-73 (recognizing limitations as stated in Franklin v. Lynaugh, 487 U.S. 164 (1988); Graham v. Collins, 506 U.S. 461 (1993); Johnson v. Texas, 509 U.S. 350 (1993)).

not, under Abdul-Kabir, have given effective voice to this conclusion through the special issues in this case.

That this instructional error mandates reversal of the death sentence follows from Abdul-Kabir and our en banc decision in Nelson v. Quarterman, 472 F.3d 287 (5th Cir. 2006). Neither of those decisions, however, alters the basic rule that for "virtually all" other collateral challenges to state court convictions the appropriate standard of review is the "substantial and injurious effect" harmless error test found in Brecht v. Abrahamson. See Fry v. Pliler, 127 S. Ct. 2321, 2325 (2007) (citing Brecht, 507 U.S. 619, 631 (1993)). Moreover, the question whether some types of Penry error might be subject to harmless error review has not been squarely decided by and remains unresolved by the United States Supreme Court. Smith v. Texas, 127 S. Ct. 1686, 1699 (2007) (Souter, J., concurring).

## IV. CONCLUSION

For these reasons, the district court's judgment denying habeas relief is REVERSED, and the case is REMANDED with instructions to grant the writ and require a resentencing of Garcia within a reasonable time to be determined by the district court.