IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,896
 





EX PARTE SHELTON DENORIA JONES, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


CAUSE NO. 596207-B IN THE 248th JUDICIAL DISTRICT COURT


HARRIS COUNTY






 Johnson, J., delivered the opinion of the Court in which Keller, P.J., and
Meyers, Womack, Keasler, Hervey, and Cochran, JJ., joined. Price, J., filed a
dissenting opinion in which Holcomb, J., joined. Holcomb, J., filed a dissenting
opinion in which Price, J., joined.


O P I N I O N



 This is a subsequent application for writ of habeas corpus filed pursuant to the provisions of
Texas Code of Criminal Procedure article 11.071, § 5. We deny relief.

 In November 1991, a jury convicted applicant of the offense of capital murder. The jury
answered the special issues submitted pursuant to Code of Criminal Procedure article 37.071, and
the trial court, accordingly, set punishment at death. Jones v. State, No. AP-71,369 (Tex. Crim. App.
May 4, 1994)(not designated for publication).

 The punishment jury-charge instruction at issue in this cause read,

 If you determine, when giving effect to the mitigating evidence, if any, that a life
sentence, as reflected by a negative finding to the issue under consideration, rather
than a death sentence, is an appropriate response to the personal culpability of the
defendant, then a negative finding should be given to one of the special issues.


 The punishment jury charge also included the two statutory special issues. Special Issue No.
1 asked, "Was the conduct of [applicant] that caused the death of the deceased committed
deliberately and with the reasonable expectation that the death of the deceased or another would
result?" Special Issue No. 2 asked, "Is there a probability that [applicant] would commit criminal
acts of violence that would constitute a continuing threat to society?" The jury answered both issues
affirmatively, and the verdict form, which contained no reference to mitigating evidence, reflected
that, in open court, the jury returned those affirmative answers to special issues as its verdict. The
trial court accordingly assessed a sentence of death.

 We denied applicant's initial post-conviction application for writ of habeas corpus and
dismissed his first subsequent application for writ of habeas corpus. Ex parte Jones, Nos. WR-62,589-01 and WR-62,589-02 (Tex. Crim. App. October 26, 2005)(not designated for publication).

 On March 6, 2006, this Court received the instant post-conviction application for writ of
habeas corpus, in which applicant raised a single allegation: the former special issues failed to
provide an adequate vehicle for the jury to give full consideration and effect to his mitigating
evidence. He asserted that the nullification instruction that he did receive had the same
constitutional inadequacies. On September 13, 2006, we found that the allegation satisfies the
requirements of Article 11.071, § 5(a), and that the requirements for consideration of a subsequent
application had been met. Accordingly, we remanded the cause to the trial court for consideration 
of the allegation.

 Upon its return from remand, on April 9, 2008, we filed and set this case for submission to
the Court. The parties were ordered to brief a number of issues:

 1) Was applicant's trial objection sufficient to preserve error? Should this Court
continue to utilize the Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985),
standard of review? If so, has applicant shown "some harm" (if preserved) or
"egregious harm" (if not preserved)?


 2) Does applicant's mitigating evidence meet the Tennard v. Dretke, 542 U.S. 274
(2004), "low threshold for relevance" standard?


 3) Is applicant's mitigating evidence adequately encompassed within the statutory
special issues? Does the future dangerousness issue provide a vehicle for the jury to
express its reasoned moral response to this evidence?


The Contentions of the Parties

 Applicant contends that error was preserved because the record reflects that defense counsel
expressly stated that his request for modification of the jury charge was being made pursuant to
Penry I. Further, when the trial court asked the state to respond, the prosecutor stated that it was the
state's position that the proposed instruction adequately charged the jury on the issues decided in the
Penry case. Applicant argues that the problematic special issues, in conjunction with the
nullification instruction as applied to the mitigating evidence in this case, resulted in error that defies
harm analysis and that the harm from such error satisfies any standard for harm, "egregious" or
"some." Applicant suggests that, since either harm standard is met, this Court need not decide which 
standard applies.

 Applicant contends that his evidence met Tennard's low-threshold standard for relevance,
and "that the former special issues of the Texas capital-sentencing scheme did not provide an
adequate vehicle for the jury to give full consideration and full effect to his mitigating evidence." 
He also asserts that "[t]he problem was not cured by providing a supplemental charge that instructed
the jurors to answer one of the special issues dishonestly if they believed that the mitigating evidence
justified a sentence less than death," and that the special issues and instructions given to his
sentencing jury did not permit the jury to give full consideration and effect to that evidence.

 In support of his argument, applicant asserts that a rational juror at the penalty phase could
have concluded, in light of the evidence at the guilt phase, that applicant's conduct was deliberate
in that it may have been designed to avoid arrest or motivated by some other purpose, but
nevertheless, a juror might also have reasonably concluded that applicant's psychological condition
reduced his moral culpability so as to make a death sentence unwarranted. He argues, that under
those circumstances, honestly answering the deliberateness special issue would have required an
affirmative answer, thus the deliberateness special issue could not serve as a vehicle for the jury to
express its reasoned moral response to his mitigating evidence.

 Applicant also asserts that the mitigating evidence concerning his psychological profile,
which indicates that he is influenced by consistent, strong external forces, is relevant to the second
special issue, but as an aggravating factor because it suggested a "yes" answer to the question of
future dangerousness. He contends that this circumstance left the jury without an adequate vehicle
to express its reasoned moral response to his evidence of his psychological impairment.

 The evidence that applicant presented at trial, and to which he now points as relevant
mitigating evidence that is outside the scope of the special issues, includes a psychological
impairment that makes him susceptible to the influences of consistent, stronger, anti-social
personalities in his environment, his abandonment by his biological father, and his intelligence, work
ethic, reliability, and trustworthiness. He contends that the special issues and the instructions given
did not permit the jury to give full consideration and full effect to that evidence.

 Applicant argues that the jurors "could not express the moral judgment that a death sentence
was excessive in light of [his] intelligence, good work ethic, reliability, and trustworthiness, if they
also concluded beyond a reasonable doubt that he might be dangerous in the future." Applicant's
brief on submission, p. 17. He asserts that the future-dangerousness special issue was thus "a
deficient vehicle for giving all of [his] mitigating evidence meaningful consideration as a basis for
a sentence less than death." Applicant's brief on submission, p. 18. Applicant asserts that "[a]
sentencing scheme that conditions consideration of any of a defendant's constitutionally relevant
mitigating evidence on jurors' willingness to disregard their oaths to render a true verdict is precisely
the sort of structural error that cannot be subject to routine harmless error review." Applicant's brief
on submission, p. 34. He also argues that, between the special issues that prevented the jurors from
giving their reasoned moral response to his mitigating evidence and the nullification instruction that
inserted capriciousness into the proceeding, the resulting error severely and irrevocably warped the
framework of the proceeding, thus resulting in error that defies harm analysis.

 The state argues that applicant has not preserved error. It notes that applicant objected only
to specific wording in the supplemental mitigation instruction and not on the basis of the instruction
in its entirety, nor did applicant object on the basis of the jury's ability to consider applicant's
mitigating evidence. Further, applicant failed to allege jury-charge error based on the nullification
instruction and the jury's ability to consider and give effect to his mitigation evidence on direct
appeal and in his first and second writ applications. State's brief on submission, p. 17-18.

 Noting that the Supreme Court, in Smith v. Texas, 550 U.S. 297, 313 (2007)(Smith II),
approved the application of the Almanza standard of review, the state asserts that Almanza should
apply, that the applicable option is that for unobjected-to error, that applicant must therefore
demonstrate egregious harm, and that he has not done so.

 With respect to relevance, the state agrees that "applicant's mitigating evidence satisfies
Tennard's low threshold standard for relevance." (State's Brief, pp. 15, 25, 28) The state
nevertheless asserts that the jury "could give meaningful consideration and effect to the applicant's
mitigating evidence under the special issues, including evidence of applicant's 'empty vessel'
personality and father's abandonment." (State's Brief, p. 15) It adds that, even if the jury was unable
to consider under the special issues applicant's evidence that he was abandoned by his father, such
evidence had only a tenuous connection to applicant's culpability for the instant offense.

Analysis

Tennard v. Dretke Standard


 Applicant asserts that his "mitigating evidence satisfies Tennard's low threshold standard
for relevance." The state concedes that the evidence meets the standard. We agree with applicant
and the state that applicant's mitigating evidence satisfies the Tennard standard, thus we continue
our inquiry and consider whether applicant's mitigating evidence could be given full effect within
the special issues or fell outside their scope.

Reasoned Moral Response to Mitigating Evidence

 In 2007, the Supreme Court issued opinions in two companion cases, Abdul-Kabir v.
Quarterman, 550 U.S. 233 (2007), and Brewer v. Quarterman, 550 U.S. 286 (2007). In Abdul-Kabir, which revisited Penry I (1) and its progeny, it stated that 

the jury must be permitted to "consider fully" such mitigating evidence and that such
consideration "would be meaningless" unless the jury not only had such evidence
available to it, but also was permitted to give that evidence meaningful, mitigating
effect in imposing the ultimate sentence. Penry I, 492 U.S., at 321, 323, 109 S. Ct.
2934, 106 L. Ed. 2d 256 (internal quotation marks omitted); Graham, 506 U.S., at
475, 113 S. Ct. 892, 122 L. Ed. 2d 260 (acknowledging that a "constitutional defect"
has occurred not only when a jury is "precluded from even considering certain types
of mitigating evidence," but also when "the defendant's evidence [i]s placed before
the sentencer but the sentencer ha[s] no reliable means of giving mitigating effect to
that evidence").


Abdul-Kabir at 260. See also Ex parte Moreno, 245 S.W.3d at 422 (Tex. Crim. App. 2008)("a jury
must be empowered by the trial court's instructions to give 'meaningful effect' to all mitigating
evidence that a capital defendant introduces at the punishment phase of his trial.").

 The sentencer in a capital case must be permitted to give full effect to all constitutionally
relevant mitigating evidence. Tennard v. Dretke, 542 U.S. 274, 284-85 (2004); Penry I, 492 U.S. at
318. Relevance in the context of mitigating evidence introduced in a capital sentencing proceeding
is no different than in any other context, thus the general evidentiary standard applies: evidence that
has any tendency to make the existence of any fact that is of consequence to the determination of the
action more or less probable than it would be without the evidence is relevant. Id., citing McKoy v.
North Carolina, 494 U.S. 433 (1990). Thus the state cannot bar the consideration of evidence if the
sentencer could reasonably find that it warrants a sentence less than death. Id. "Once this low
threshold for relevance is met, 'the Eighth Amendment requires that the jury be able to consider and
give effect to' a capital defendant's mitigating evidence." Id. at 285, quoting Boyde v. California,
494 U.S. 370, 377-78 (1990). "Relevant mitigating evidence is evidence which tends logically to
prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have
mitigating value." Id. at 284-85, quoting McKoy v. North Carolina. Such Penry error produces a
reasonable likelihood that the jury interpreted the special issues to foreclose adequate consideration
of the mitigating evidence. Smith II at 316.

 In Penry v. Johnson, 532 U.S. 782 (2001)(Penry II), the Supreme Court held that the jury 
instruction on mitigation was ineffective and illogical. The Court noted that attempts by the trial
court, the state, and the defense to clarify the supplemental instruction "do not bolster our confidence
in the jurors' ability to give effect to Penry's mitigating evidence in deciding his sentence. Rather
they highlight the arbitrary way in which the supplemental instruction operated, and the fact that the
jury was essentially instructed to return a false answer to a special issue in order to avoid a death
sentence." Id. at 801. The instruction at issue in Penry is virtually identical to the instruction from
this case. (2) Thus the nullification instruction in this case was not sufficient to cure error if the special-issue instructions themselves were inadequate to permit the jurors to give meaningful effect to
applicant's mitigating evidence.

 Applicant suggests that much of his evidence was mitigating and outside the scope of the
special issues. Among the circumstances found by the Supreme Court to fall outside the scope of
the old special issues are a troubled childhood, (3) learning disabilities, (4) low IQ/special education
status, (5) neglect, (6) abandonment, (7) neurological damage, (8) substance abuse, (9) family violence in
childhood, (10) mental illness, (11) and domination by another. (12) Circumstances that fall within the scope
of the special issues include youth (13) and redeeming personal qualities. (14)

 In Smith I, the Supreme Court described a variety of mitigating evidence: at an early age, the
defendant had been diagnosed with potential organic learning disabilities and speech handicaps; the
defendant had IQ scores of 75 and 78, and as a result had been in special-education classes during
most of his time in school; despite his low IQ and learning disabilities, the defendant's behavior at
school was often exemplary; the defendant's father was a drug addict who engaged in gang violence
and criminal activities and stole money from family members to support a drug addiction; and the
defendant was 19 years old when he committed the crime. Smith I, 543 U.S. at 41. Of these, the
Supreme Court found that Smith's evidence of his IQ scores and history of participation in special-education classes was relevant mitigating evidence that a jury might have considered to be a reason
to impose a sentence less than death and was outside the scope of the special issues. Id. at 44-45.

 In Abdul-Kabir, supra, the Supreme Court noted mitigating evidence that included the
defendant's family members' testimony describing his unhappy childhood of neglect and
abandonment, as well as expert testimony from two psychologists "that his violent propensities were
caused by factors beyond his control-namely, neurological damage and childhood neglect and
abandonment" and "suggesting that his dangerous character may have been the result of his rough
childhood and possible neurological damage[.]" Abdul-Kabir, 550 U.S. at 240-41, 256.

 In Brewer, the Supreme Court likewise noted that the defendant's mitigating evidence
included that: the defendant had suffered from depression three months before the offense; he had
been briefly hospitalized for that depression; the defendant's co-defendant, a woman with whom he
was obsessed, dominated and manipulated him; he had been abused by his father; he had witnessed
his father abuse his mother; and he had abused drugs. Brewer, 550 U.S. at 289-90. The Court
concluded that the jury must be allowed to consider Brewer's evidence of mental illness, substance
abuse, and troubled childhood, and also must be able to respond to it in a reasoned, moral manner
and weigh such evidence in deciding whether the defendant is truly deserving of death. Id. at 295-96.

 In Penry I, the Supreme Court concluded that the special issues were too limited to give
mitigating effect to the defendant's evidence of mental retardation and severe childhood abuse and
that such mitigating evidence was thus outside the scope of the special issues.

 While "[t]he jury must have a 'meaningful basis to consider the relevant mitigating qualities'
of the defendant's proffered evidence[,]" Abdul-Kabir, 550 U.S. at 259, quoting Johnson v. Texas,
509 U.S. 350 (1993), the special issues alone may provide for the adequate consideration of the
defendant's mitigating evidence. We observe that in Graham v. Collins, 506 U.S. 461, 475-76
(1993) the Supreme Court held that proffered mitigating evidence of the defendant's youth,
background of difficult upbringing, and his redeeming character traits could be given constitutionally
adequate consideration in the course of the jury's deliberation on the special issues and was thus not
beyond the effective reach of the jury. In Johnson v. Texas, 509 U.S. 350, 369 (1993), the Supreme
Court likewise held that the defendant's youthful age as a relevant mitigating circumstance was
within the effective reach of the jury; "the ill effects of youth that a defendant may experience are
subject to change and, as a result, are readily comprehended as a mitigating factor in consideration
of the second special issue." Johnson, 509 U.S. at 369.

 In Moreno, the mitigating evidence at issue involved Moreno's troubled childhood, including 
a birth defect to his left ear which required multiple surgeries throughout his first seven years. There
was evidence that he was also taunted by neighborhood boys because of the deformity, although he
was consoled by his mother. When he was still a small child, his mother and grandmother both
became very ill, and his father had to get a second job in order to pay the medical expenses. When
he was fifteen years old, his mother died, and he took her death very hard. Thereafter he dropped
out of school, worked at various poorly paid jobs, and lived in his father's house relatively
unsupervised. He was eighteen years old at the time he committed the charged offense. Additional
mitigating evidence included testimony from various family friends and jail chaplains about his good
personal characteristics. Moreno, 245 S.W.3d at 423-24. We concluded that "[a]t least with respect
to his evidence of a troubled childhood, [Moreno] was entitled to" a jury instruction as a vehicle to
express its reasoned moral response to such mitigating evidence. Id. at 425. We held that because
circumstances of the offender can reasonably justify a jury assessment of a life sentence, and if those
circumstances are not already fully or meaningfully encompassed within one or both of the special
issues, then a separate jury instruction is constitutionally required. Id. at 426.

 We also noted that we could "no longer maintain that evidence of a troubled childhood is
adequately encompassed within the statutory special issues." Id. Because the evidence of Moreno's
troubled childhood could not be given meaningful effect within the context of the statutory special
issues and the trial court failed to give a separate jury instruction that would empower the jury to
assess a life sentence on the basis of such mitigating evidence, notwithstanding its answers to the
special issues, we vacated the punishment portion of Moreno's judgment and remanded to the trial
court for a new punishment hearing. Id. at 431. The mitigating evidence that was held to be outside
the scope of the special issues was that of the defendant's troubled childhood.

 In Ex parte Martinez, 233 S.W.3d 319, 320 (Tex. Crim. App. 2007), we noted mitigating
evidence of the defendant's hospitalization on multiple occasions in state psychiatric facilities, his
abuse of alcohol since the age of thirteen, and a troubled childhood. We concluded that Martinez had
presented constitutionally relevant mitigating evidence and that the jury did not have a vehicle to
give this evidence meaningful consideration. We therefore granted habeas corpus relief, set aside
the death sentence, and remanded the case to the trial court for another punishment hearing.
Martinez, 233 S.W.3d at 323-24.

 In each of these cases, the mitigating evidence that was held to be outside the scope of the
special issues differs significantly from applicant's mitigating evidence. We are unconvinced that
applicant's proffered mitigating evidence was outside the scope of the special issues. Applicant did
not show evidence of a seriously troubled childhood. Rather, evidence showed that he had a stable
family background and was raised in a cohesive two-parent household, albeit not by his biological
father, who abandoned him. There was no evidence of learning disabilities, low IQ, or neurological
damage. Rather, there was testimony about applicant's intelligence. There was no testimony that he
abused substances. Although applicant presented evidence that he suffers from psychological
irregularities or deficits, including what his psychologist expert witness described as "empty vessel
syndrome," which made him susceptible to being influenced by others, such evidence is a far-cry
from the sort of psychological mitigation evidence that has been determined to be Penry evidence. 
Further, the facts of the offense rebut that assessment as to the offense charged; applicant shot a
police officer during a traffic stop, without provocation or urging of armed violence by his
companion. The testimony as to his youth and redeeming character traits is the sort that the Supreme
Court has held to fall within the scope of the special issues.

 We note that the Supreme Court has said that it has "never denied that gravity has a place in
the relevance analysis, insofar as evidence of a trivial feature of the defendant's character or the
circumstances of the crime is unlikely to have any tendency to mitigate the defendant's culpability. 
. . . Rather, the question is simply whether the evidence is of such a character that it might serve as
a basis for a sentence less than death, Skipper [v. South Carolina, 476 U.S. 1 (1986)], supra, at 5." 
Tennard, 542 U.S. at 286 (internal quotation marks omitted). We conclude that applicant's
mitigation evidence, while meeting the Tennard standard for relevance, had "only a tenuous
connection-'some arguable relevance'-to the defendant's moral culpability." Abdul-Kabir, 550 U.S.
at 253 n.14. Of all the sorts of evidence that have been noted by the Supreme Court as relevant
mitigating evidence, only two circumstances, youth and positive personal characteristics, are present
in this case, and those are the sorts of evidence that the Supreme Court has held are within the scope
of the former special issues. Because the jury could give full and meaningful effect to that evidence
within the scope of the former special issues, there was no Penry error.

 Relief is denied.


Delivered: June 10, 2009

Do not publish
1. Penry v. Lynaugh, 492 U.S. 302 (1989). 
2. The portion of the instruction quoted in Penry II reads,


 If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected
by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate
response to the personal culpability of the defendant, a negative finding should be given to one of the
special issues.

 

Penry II, 532 U.S. at 790. The relevant portion of the instruction in the instant cause reads,


 If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected
by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate
response to the personal culpability of the defendant, then a negative finding should be given to one
of the special issues.
3. Brewer, 550 U.S. at 289-90; see also, Moreno, 245 S.W.3d at 426.
4. Smith v. Texas, 543 U.S. 37, 48 (Smith I)
5. Id.
6. Abdul-Kabir, 550 U.S. at 240-41, 256. 
7. Id.
8. Id.
9. Brewer, 550 U.S. at 295-96. 
10. Id.
11. Id.; see also Martinez, 233 S.W.3d at 320.
12. Brewer at 295-96. 
13. Johnson v. Texas, 509 U.S. 350, 369 (1993); Graham v. Collins, 506 U.S. 461, 475-76 (1993).
14. Graham, 506 U.S. at 475-76.