IN THE COURT OF CRIMINAL APPEALS


OF TEXAS
 





NO. AP-75,364
 





EX PARTE RAYMOND DELEON MARTINEZ, Applicant





ON APPLICATION FOR A WRIT OF HABEAS CORPUS


 FROM HARRIS COUNTY





 Hervey, J., delivered the opinion of the unanimous Court.



O P I N I O N 



 In this case, we decide that it is not an abuse of the writ of habeas corpus to seek relief on the
meritorious claim presented in applicant's subsequent state habeas application. Applicant claims that the
jury at his 1989 capital murder trial did not have a vehicle to give "meaningful consideration" to his
"constitutionally relevant mitigating evidence." We, therefore, set aside applicant's death sentence and
remand the case to the convicting court for another punishment hearing.

 Applicant was indicted in August 1983 for a capital murder that he committed in July 1983. 
Applicant was convicted of this offense and sentenced to death in 1989. This conviction and sentence were
affirmed on direct appeal in 1993. See Martinez v. State, 867 S.W.2d 30 (Tex.Cr.App. 1993). (1)

 Evidence was presented at applicant's 1989 trial that applicant had been incarcerated in the Texas
prison system for about 14 years when he was released in December 1982 at the age of 36. During the
approximately eight-month period of time between his release from prison and his arrest for this offense,
applicant engaged in violent behavior resulting in, as the State described it during closing jury arguments
at the punishment phase of applicant's 1989 trial, "a trail of bodies being left everywhere." Evidence was
presented that applicant's primary motivation for this violent behavior was to enhance his status in a criminal
organization known as the Texas Syndicate.

 Evidence of applicant's psychiatric problems was also presented at his 1989 trial. In April 1967,
applicant was tried for burglary before a Comanche County jury, which found applicant not guilty by reason
of insanity. This jury also found that applicant was insane at the time of his April 1967 trial. Applicant was
sent to the Rusk State Hospital as a result of these insanity findings. In October 1968, applicant was
"furloughed" from the Rusk State Hospital and eventually discharged based on a finding of "Sanity restored
10-21-68." Applicant was also hospitalized for various psychiatric problems at the Wichita Falls State
Hospital in December 1966 and twice in November 1968. Medical records from these hospitalizations
indicate that applicant may have suffered from "[s]chizophrenic reaction, chronic, undifferentiated, with
paranoid and catatonic features." Most of these medical records, however, reflect diagnoses by various
medical personnel that applicant is a sociopath. These medical records also describe, among other things,
applicant's abuse of alcohol since the age of thirteen and what some might view as a "troubled childhood." (2)

 The trial court's punishment charge at applicant's 1989 trial contained the three special issues
required by Texas law at the time (the "deliberateness," the "future-dangerousness," and the "provocation"
special issues). In response to the United States Supreme Court's decision in Penry v. Lynaugh, (3) which
had been decided about four months before applicant's 1989 trial, the trial court also submitted a
supplemental jury instruction, which instructed the jury to negatively answer any one of the three special
issues if it found sufficient mitigating circumstances to warrant a sentence less than death when deliberating
"on the questions posed in the special issues." This supplemental instruction stated:

 You are instructed that when you deliberate on the questions posed in the special issues,
you are to consider mitigating circumstances, if any, supported by the evidence presented
in both phases of the trial, whether presented by the state or the defendant. A mitigating
circumstance may include, but is not limited to, any aspect of the defendant's character and
record or circumstances of the crime which you believe could make a death sentence
inappropriate in this case. If you find that there are any mitigating circumstances in this
case, you must decide how much weight they deserve, if any, and thereafter, give effect
and consideration to them in assessing the defendant's personal culpability when answering
the issue under consideration. If you determine, when giving effect to the mitigating
evidence, if any, that a life sentence, as reflected by a negative finding to the issue under
consideration, rather than a death sentence, is an appropriate response to the personal
culpability of the defendant, a negative finding should be given to that special issue under
consideration.

 

 Applicant made various objections to this supplemental instruction all of which the trial court
overruled. Within these objections, applicant claimed that "any charge relating to Penry" should be in the
form of a separate "special issue" so that "the jury could consider mitigating evidence separate and apart
from their consideration of the three [special] issues." Applicant claimed:

 We further submit that any charge relating to Penry should be in, either in the form of a
special issue making inquiry as to whether or not there are mitigating circumstances and so
forth or in some other form so the jury could consider the mitigating evidence separate and
apart from their consideration of the three issues that the Court is submitting under the law.

* * *

 Further, we would object to the Court's Charge in that the three special issues submitted,
in none of them, that the same would apply to all three of them. No inquiry is made of or,
and the jurors are not told to consider mitigating evidence. And if they do, should consider
the mitigating evidence, what is sufficient evidence to lower the verdict from death to life? 
They should be given an opportunity to consider the mitigating evidence independently
from each of the other, the three issues submitted in this charge by the Court. They are
denied the opportunity of doing that by the wording of the Court's Charge and the wording
of the special issues and the blanks that are left for them to be filled in with what they deem
to be the appropriate responses.

 

 Point of error twenty-one in applicant's brief on direct appeal from his 1989 trial asserted that the
"trial court erred in submitting an objectionable mitigation charge at punishment." Among other things,
applicant argued that a "separate special issue" on mitigation should have been submitted and that the trial
court's supplemental instruction did not cure "the very defect recognized in Penry." (4) This Court's 1993
partially published and partially unpublished opinion on direct appeal (5) decided that the trial court's
supplemental instruction avoided the constitutional infirmity condemned by Penry, because there was no
reasonable likelihood that the jury applied this instruction in a way that prevented it from considering
constitutionally relevant mitigating evidence. (6)

 On April 24, 1997, applicant filed his first state habeas application, which did not contain the Penry
claim that applicant had raised at trial and on direct appeal. (7) On August 18, 1999, this Court denied relief
on applicant's first state habeas application based on the convicting court's findings of fact and conclusions
of law. Ex parte Martinez, No. 42,342-01 (Tex.Cr.App., August 18, 1999).

 On March 21, 2006, applicant filed this subsequent state habeas application presenting essentially
the same Penry claim that applicant had raised at trial and on direct appeal. Upon finding that applicant's
subsequent state habeas application is not procedurally barred as an abuse of the writ under Article 11.071,
§ 5(a), Tex. Code Crim. Proc., this Court, on March 24, 2006, filed and set this application "for a
review of the legal question raised." See Ex parte Martinez, No. 42,342-02 (Tex.Cr.App., March 24,
2006).

 We initially note that the Penry claim presented in applicant's subsequent writ is based on binding
and directly relevant United States Supreme Court precedent decided after applicant had exhausted this
Penry claim at trial and on direct appeal and after applicant had filed his first state habeas application. (8) 
Under these circumstances, we affirm our initial determination in our order of March 24, 2006, that
applicant's subsequent state habeas application is not procedurally barred as an abuse of the writ under
Article 11.071, Section 5(a). See Ex parte Hood, 211 S.W.3d 767, 776-77 (Tex.Cr.App. 2007).

 We further believe that the recent United States Supreme Court precedent already cited in this
opinion compels a decision that applicant presented "constitutionally relevant mitigating evidence" (9) at his
1989 trial and that the jury did not have a vehicle to give this evidence "meaningful consideration." See
Abdul-Kabir, 127 S.Ct. at 1659, 1664, 1666, 1668 n.14, 1672, 1674-75 (jury constitutionally required
to have vehicle to give "meaningful consideration" or "meaningful effect" or a "reasoned moral response"
to a defendant's "constitutionally relevant mitigating evidence"). Under the most recent Supreme Court
cases, the three special issues did not provide the jury with a vehicle to give "meaningful consideration" to
applicant's "constitutionally relevant mitigating evidence," because the strength of this evidence was not to
negate the special issues but to provide "an explanation for his behavior that might reduce his moral
culpability." See Abdul-Kabir, 127 S.Ct. at 1661, and at 1668 n.14, and at 1669 n.16 (in some cases
a defendant's evidence may have mitigating effect beyond its ability to negate the special issues). We,
therefore, decide that there is a reasonable likelihood that these special issues precluded applicant's jury
from giving "meaningful consideration" to applicant's mitigating evidence. See Abdul-Kabir, 127 S.Ct.
1673-74 (in answering special issues, jury could not have given "meaningful effect" to "mitigating qualities"
of "[Abdul-Kabir's] evidence of childhood neglect and abandonment and possible neurological damage
or Brewer's[ (10)] evidence of mental illness, substance abuse, and a troubled childhood") (emphasis in
original).

 The final issue that we must address is whether the trial court's supplemental instruction provided
the jury with a vehicle to meaningfully consider applicant's mitigating evidence. This supplemental
instruction is essentially the same one that the Supreme Court in Penry II decided was insufficient to
provide the jury with a vehicle to consider Penry's mitigating evidence. See Penry II, 532 U.S. at 789-90,
796-804; (11) see also Smith I, 543 U.S. at 39-40, 45-49 (same).

 Habeas corpus relief is granted. Applicant's death sentence is set aside, and the case is remanded
to the trial court for another punishment hearing.


 Hervey, J.


Delivered: September 12, 2007

Publish
1. Applicant had previously been convicted of this offense and sentenced to death in 1984, but this
conviction and sentence were overturned on direct appeal in 1988 based on jury-selection error. See
Martinez v. State, 763 S.W.2d 413 (Tex.Cr.App. 1988).
2. Omitting footnotes and citations to the record, we set out supported-by-the-record descriptions
in applicant's brief of the mitigating evidence presented at his 1989 trial:


 At the punishment phase, the prosecution introduced [applicant's] prior criminal history. 
Part of that history was a prior conviction from Comanche County, Texas where
[applicant] had been found not guilty by reason of insanity. The defense introduced
evidence that on three occasions [applicant] had been hospitalized at the Wichita Falls
State Hospital.


 In the first documented admission, December 9, 1966, the admitting case worker noted
that [applicant] had complained of chest pains, severe headaches, difficulty breathing and
spells of vomiting lasting 2-3 days. [Applicant] told the doctors that he thought he was
dying. He was incarcerated in the Comanche County jail but the symptoms did not abate
and a doctor told him that the state hospital might help him.


 The admitting case worker noted a history of psychiatric disorder in [applicant's] family. 
His mother had been hospitalized with mental illness in San Antonio on several occasions.
[Applicant] had been hospitalized in John Sealy hospital in Galveston for three months in
1966 and once, for an overnight diagnosis in June of 1966 in San Antonio. She noted that
[applicant] became confused when discussing dates of these events and was concerned
about his seizures. A physician noted that [applicant] had been experiencing hallucinations
upon his admission and that his judgment and insight were impaired. Upon [applicant's]
release, the physician noted two diagnoses: an antisocial reaction and psychoneuroses. 
There had been no improvement in his condition; [applicant] had run away from the
hospital.


 He was admitted again in 1968. The admitting physician, Dr. Caballero noted his prior
hospitalization and that [applicant] had just spent 19 months at Rusk State Hospital as a
result, presumably, of the Comanche County insanity verdict. The [sic] noted that while
[applicant] was both alert and cooperative, his affect was inappropriate. While [applicant]
denied hallucinations, "he seems quite delusional, mostly about people in Risk [sic] State
Hospital."


 The patient says that the attendants over there are mean to him and his
[sic] feels that they were against him. The patient is well oriented as to
time, place, and person. His answers to proverbs are vague. His
judgment and reasoning are quite poor. Insight is impaired."


 Dr. Caballero maintained the 1966 diagnoses. [Applicant] then left the hospital again but
returned.
3. 492 U.S. 302 (1989) (Penry I).
4. Applicant argued in his brief on direct appeal:


 The interplay of the three Texas special issues and consideration of mitigation require a
separate special issue. Here the jury is charged in one section to answer the questions
affirmatively if convinced the State has shown such an answer is justified beyond a
reasonable doubt. That section is consistent with the juror's oath to follow the evidence. 
However, the jury is also told that if its view of mitigating evidence means that the death
sentence is not an appropriate response it should answer the special issue under
consideration negatively. A fundamental question remains: what if mitigation evidence does
not directly relate to one of the three special issues. Here the jury is only told that
mitigation can be given effect in the context of the special issues. This was the very defect
recognized in Penry-a reasonable juror still has no vehicle for expressing the view that
Appellant did not deserve to be sentence to death based on his mitigating evidence.
[Footnote omitted].


(Emphasis in original).
5. See Martinez, 867 S.W.2d at 41.
6. See Martinez, slip op. at 25-26 (this portion of opinion not designated for publication).
7. Applicant's first state habeas application presented, among other things, a claim that his trial counsel
was ineffective for failing to investigate, develop and present mitigating evidence. On July 9, 1999, the
convicting court made findings of fact and conclusions of law adverse to applicant on this and the other
claims raised in his first state habeas application.
8. Applicant's brief cites the United States Supreme Court's decisions in Smith v. Texas, 543 U.S.
37 (2004) (Smith I), Tennard v. Dretke, 542 U.S. 274 (2004), and Penry v. Johnson, 532 U.S. 782
(2001) (Penry II). We further note that, after applicant filed his brief in this case, the United States
Supreme Court decided three more cases that are directly relevant to the issue presented in this case. See
Abdul-Kabir v. Quarterman, 550 U.S. , 127 S.Ct. 1654 (2007); Brewer v. Quarterman, 550 U.S. 
 , 127 S.Ct. 1706 (2007); Smith v. Texas, 550 U.S. , 127 S.Ct. 1686 (2007) (Smith II). 
9. See Brewer, 127 S.Ct. at 1709-10, 1713-14 (Brewer's evidence of mental illness and substance
abuse was constitutionally relevant mitigating evidence); Tennard, 542 U.S. at 277 (reference in an old
prison document to defendant's low IQ score was constitutionally relevant mitigating evidence); Ex parte
Tennard, 960 S.W.2d 57, 59 (Tex.Cr.App. 1997) (more fully describing the constitutionally relevant
mitigating evidence presented at Tennard's capital murder trial).
10. See Brewer, 127 S.Ct. at 1709-10, 1713-14.
11. The constitutionally defective supplemental instruction in Penry II, 532 U.S. at 789-90, stated:


 You are instructed that when you deliberate on the questions posed in the special issues,
you are to consider mitigating circumstances, if any, supported by the evidence presented
in both phases of the trial, whether presented by the state or the defendant. A mitigating
circumstance may include, but is not limited to, any aspect of the defendant's character and
record or circumstances of the crime which you believe could make a death sentence
inappropriate in this case. If you find that there are any mitigating circumstances in this
case, you must decide how much weight they deserve, if any, and therefore, give effect and
consideration to them in assessing the defendant's personal culpability at the time you
answer the special issue. If you determine, when giving effect to the mitigating evidence,
if any, that a life sentence, as reflected by a negative finding to the issue under
consideration, rather than a death sentence, is an appropriate response to the personal
culpability of the defendant, a negative finding should be given to one of the special issues.