IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,370






EX PARTE CHARLES DEAN HOOD, Applicant








ON RECONSIDERATION ON THE COURT'S OWN MOTION OF


AN APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM COLLIN COUNTY






 Keasler, J., filed a dissenting opinion in which Keller, P.J., and Hervey, J.,
joined.


 The plurality ignores the language of Texas Code of Criminal Procedure Article
11.071, Section 5(a), posits a false "conundrum," and relies upon cases that are
distinguishable. Because Article 11.071 requires that Hood's application be dismissed, I
dissent.

 Under Article 11.071, the merits of a subsequent habeas application may be
considered only under limited circumstances. (1) At issue here is whether the legal basis of
Hood's claim was "unavailable" on the date a previous application was filed. (2) The
Legislature has specifically defined what it means for a legal basis to be "unavailable": 

For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or
before a date described by Subsection (a)(1) if the legal basis was not
recognized by or could not have been reasonably formulated from a final
decision of the United States Supreme Court, a court of appeals of the United
States, or a court of appellate jurisdiction of this state on or before that date. (3)


We are not at liberty to ignore this definition. Addressing a prior legislative scheme that
prohibited the consideration of late-filed habeas applications, we emphasized our duty to
enforce the laws written by the Legislature:

Our oaths are to uphold the constitutions and laws of this country and state;
they are not a commission to do what a majority of us think is fair. This law
was passed by the legislature and approved by the governor, in accordance
with our constitutional form of government. The law is clear: this court shall
dismiss this application because it was filed late. If the law is barbarous, the
legislature should repeal it or the governor should commute or pardon those
who are subjected to it. In the meantime, we must follow it. (4) 


 The plurality does not purport to explain how Hood has shown that the legal basis of
his current claim was not available when he filed his previous application because it cannot.
Notably, there is nothing but silence from Judge Price, who agreed with our disposition of
this case on original submission. (5) Judge Price's contrary opinion today is the sole reason that
yesterday's minority view is now the law. 

 Penry II, decided in 2001, (6) was the first time that the United States Supreme Court
ever said that a nullification instruction would not satisfy the dictates of Penry I. (7) Penry II
was decided after applicant's direct appeal, where he had raised a Penry challenge, but before
applicant filed his second habeas application, where he did not raise a Penry challenge. 
Unquestionably, then, Hood's current legal challenge could have been "reasonably
formulated" from the Supreme Court's decision in Penry II.

 The plurality contends that we can "forgive" Hood for not recognizing that he had a
valid Penry claim, "because we had not yet recognized that fact ourselves." (8) But whether
this Court had recognized the validity of a claim is not the test under Article 11.071, Section
5(a)(1); the test, in part, is whether the claim was recognized by a decision from any court
enumerated in the statute. Even if the validity of a claim is not recognized by this Court, it
is considered "available" under the habeas statute if it is recognized by a decision from the
United States Supreme Court, a federal appeals court, or a Texas state appeals court.

 The test also includes whether the claim could have been "reasonably formulated"
from a decision of this Court or one of the other courts mentioned above. There are many
claims that can be reasonably formulated that we do not yet recognize as valid. We routinely
grant petitions for discretionary review to consider such claims. When the plurality says that
we should not expect Hood to be "more prescient than ourselves," (9) it reveals its confusion:
The issue is whether a claim is colorable to the required degree (recognized by or can be
reasonably formulated from a Supreme Court, federal circuit court, or Texas appellate court
decision), not whether we currently recognize it as the controlling law in Texas. This is why
we were correct on original submission when we said, "Another point that deserves emphasis
is that lack of recognition is not enough to render a legal basis unavailable. If the legal basis
could have been reasonably formulated from a decision issued by a requisite court, then the
exception is not met." (10)

 The plurality also suggests that we can "forgive" Hood's dereliction because of our
decision in Ex parte Smith, (11) which held that an unambiguous nullification instruction (such
as the one given here) was sufficiently distinguishable from the instruction given in Penry II
so as to satisfy Penry I. (12) There are two reasons that our decision in Smith could not have
rendered applicant's Penry claim "unavailable." First, Smith was not a United States
Supreme Court decision. Although Smith had interpreted Penry II in a manner that was
adverse to Hood, the Supreme Court had not yet had occasion to address that interpretation. 
So the possibility remained that the Supreme Court could disagree with our interpretation. 
And as long as that possibility remained, then, under the habeas statute, there remained a
Supreme Court decision--Penry II--from which Hood's claim could have been reasonably
formulated. 

 Second, our decision in Smith was not final when Hood filed his application. The
decision was only a month old, leaving the possibility open that Smith could file a petition
for writ of certiorari with the Supreme Court of the United States, (13) have that petition
granted, and ultimately obtain a reversal. That is precisely what happened. (14) By
distinguishing Penry II (as not applicable to unambiguous instructions) in a published
opinion, our decision in Smith in fact highlighted the issue, so that no one could rely on a
lack of notice as to the issue's existence. And because it was the first time that Penry II had
been distinguished in that fashion, and the decision was still subject to Supreme Court
review, it was clearly a live issue that any person filing a capital habeas application should
have taken into account. 

 The plurality contends that our scheme and the federal scheme create a "conundrum"
because "a death-row inmate must argue in this Court that Tennard, Smith, et al. announced
new law, but he must argue that those same cases simply reiterated clearly established law
once he arrives in federal court." (15) As a result, the plurality concludes that Hood "is entitled
to relief in one court or the other." (16) Even if this were true, that does not give us license to
ignore a controlling state statute that requires the dismissal of the state habeas application. 
That an applicant may inevitably receive relief on federal habeas is never a reason to ignore
the requirements of 11.071. If my stance seems harsh or unfair, it should be remembered that
only the Legislature can remedy the situation. This case provides yet another egregious
example of judges legislating from the bench, ignoring what the majority of our citizens,
through their various state representatives, have declared is the law of the state.

 Nevertheless, the so-called "conundrum" does not really exist. The statutory
requirement that a state habeas claim be "new" applies only to subsequent applications. (17) If
a claim is filed in an initial state habeas application, both the state and federal courts may
consider a claim based on long-standing, firmly established federal constitutional law. 
Ineffective assistance of counsel claims, for example, tend to be of this variety.

 Even if we are just considering subsequent applications, a claim could easily qualify
as "new" in state habeas court and yet be subject to consideration under the "unreasonable
application of clearly established law" (18) standard in federal court. This would occur if the
Supreme Court announced a new rule of constitutional law, a death-row inmate raised a
claim based on this new rule in a subsequent state habeas application that was his first
application filed after the new rule was announced, and this Court held against the inmate
in an opinion that unreasonably applied that newly established rule. 

 Further, as we explained in our opinion on original submission, the interplay between
the law of cognizability and the subsequent application requirements of article 11.071,
Section 5, can result in an issue becoming "new" as to a particular applicant even if it is not
"new" in a general sense. (19) Some court-made rules can affect the cognizability of a claim in
an initial state habeas proceeding, and one such rule is implicated here: Hood would have
been barred from raising his Penry claim in his first habeas application because a rule
procedurally barring that claim prevents the relitigation of claims on habeas that were raised
and rejected on direct appeal. (20) In such a case, direct appeal, and ultimately a petition for
writ of certiorari from our decision in that direct appeal, would be an available avenue for
the adjudication of the claim. With the advent of Penry II, however, habeas corpus also
became an avenue for litigating Hood's Penry claim because a change in the law is an
exception to the procedural bar. (21)

 For that reason, the plurality is just plain wrong in saying that our opinion on original
submission took a position inconsistent with the Supreme Court's later decision in Abdul-Kabir v. Quarterman (22) in suggesting that "Penry II announced new law." (23) We expressly
declined to decide whether Penry II announced "new" law "in the abstract" but held that it
was "new" as to the applicant because a nullification claim had been resolved against him
in a prior proceeding. (24) So even if our holdings before Penry II were "unreasonable
applications of clearly established law," (25) it was still true that a Penry claim could not have
been "reasonably formulated" by Hood while it remained non-cognizable. Even if Penry II
did not establish "new" law in a general sense, it was a new legal authority for cognizability
purposes and was also a new "Supreme Court decision" from which Hood's claim could have
been "reasonably formulated." Had Hood raised his claim in the first application filed after
Penry II was handed down, then he would have satisfied Article 11.071, Section 5. This rule
of showing unavailability by exhaustion, articulated on original submission, (26) is not a hollow
one: In Ex parte Martinez, for example, we followed this rule, found that the claims in that
case were not barred by Section 5, and granted relief. (27)

 If Hood faces a "conundrum," it is because, unlike other habeas applicants, he chose
to file a pro-se habeas application without raising an available Penry claim. This is exactly
the kind of behavior that the Legislature specifically sought to prohibit by enacting Section
5(a). But no "conundrum" exists for Hood because he is simply not entitled to relief in any
forum. The plurality's contention that he is entitled to relief either in this Court or federal
court is wrong because a dismissal under Article 11.071, Section 5 would be an adequate and
independent state ground that would bar relief in federal court. (28) 

 Finally, the plurality relies upon several prior, unpublished decisions for the
proposition that other litigants have received relief under similar circumstances, and it
concludes that we should treat Hood like those litigants. (29) But those cases are
distinguishable. The habeas applicants in Davis and Robertson did raise a Penry claim in
their first post-Penry II applications. (30) The same is true in the more recent cases cited by the
plurality today. (31) In some, but not all of the cases, the applicant also raised the claim on
direct appeal and in an initial habeas application. (32) Although our opinion on original
submission did not decide whether Penry II made nullification claims newly available in
general under article 11.071, Section 5, some of our subsequent unpublished decisions are
consistent with doing so. Such a view is entirely understandable because Penry II was the
first time the Supreme Court said that a nullification instruction was insufficient to satisfy
Penry I's dictates. But until today, all of our cases were also consistent with the view that
an applicant could not challenge a nullification instruction if the applicant failed to do so in
a previous application filed after Penry II. 

 Because the Court's decision is contrary to our state habeas statute, I dissent. 

 

DATE DELIVERED: February 24, 2010

PUBLISH
1. Tex. Code Crim. Proc. art. 11.071 § 5(a).
2. Tex. Code Crim. Proc. art. 11.071 § 5(a)(1).
3. Tex. Code Crim. Proc. art. 11.071 § 5(d).
4. Ex parte Smith, 977 S.W.2d 610, 611 (Tex. Crim. App. 1998).
5. Ex parte Hood, 211 S.W.3d 767, 770 (Tex. Crim. App. 2007). 
6. Penry v. Johnson (Penry II), 532 U.S. 782 (2001). 
7. Penry v. Lynaugh, 492 U.S. 302 (1989); see Penry II, 532 U.S. at 798-800.
8. Plurality op. at 18 n.51.
9. Id.
10. See Ex parte Hood, 211 S.W.3d at 775.
11. 132 S.W.3d 407 (Tex. Crim. App.), rev'd, Smith v. Texas, 543 U.S. 37 (2004).
12. See Plurality op. at 18 n.51; see also Smith, 132 S.W.3d at 416-17.
13. U.S. Supreme Ct. R. 13(1) ("Unless otherwise provided by law, a petition for a
writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court
of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after
entry of the judgment."). 
14. See Smith v. Texas, 543 U.S. 37 (2004).
15. Plurality op. at 16.
16. Id. at 19.
17. See Tex. Code Crim. Proc. art. 11.071 § 5.
18. See 28 U.S.C. § 2254(d)(1). 
19. See Hood, 211 S.W.3d at 776-77.
20. See Ex parte McFarland, 163 S.W.3d 743, 748 (Tex. Crim. App. 2005).
21. Ex parte McFarland, 163 S.W.3d at 748; Ex parte Drake, 883 S.W.2d 213, 215
(Tex. Crim. App. 1994).
22. 550 U.S. 233 (2007).
23. See Plurality op. at 18.
24. See Hood, 211 S.W.3d at 776.
25. See 28 U.S.C. § 2254(d)(1). 
26. See Hood, 211 S.W.3d at 777.
27. 233 S.W.3d 319, 322-23 (Tex. Crim. App. 2007).
28. See Hughes v. Quarterman, 530 F.3d 336, 341-42 (5th Cir. 2008), cert. denied, 129
S. Ct. 2378 (2009); see also Kunkle v. Texas, 543 U.S. 1039, 1039-1040 (2004) (Stevens, J.,
concurring); Moore v. Texas, 535 U.S. 1044 (2002) (Scalia, J., dissenting).
29. See Plurality op. at 14 n.41, 20.
30. See Hood, 211 S.W.3d at 780, 780 n.56 (distinguishing Ex parte Robertson, No.
AP-74,720 (Tex. Crim. App. Mar. 16, 2005) (not designated for publication) and Ex parte
Davis, No. WR-40,339-06 (Tex. Crim. App. Mar. 29, 2006) (not designated for publication)).
31. See Ex parte Buntion, No. AP-76,236 (Tex. Crim. App. Sept. 30, 2009) (not
designated for publication) (prior application filed in 1996); Ex parte Rachal, No. WR-60,394-02 (Tex. Crim. App. Sept. 23, 2009) (not designated for publication) (prior
application filed in 1997); Ex parte Jones, No. AP-75,896, 2009 WL 1636511 (Tex. Crim.
App. June 10 2009) (not designated for publication) (while not setting forth the procedural
history about prior habeas applications, internal court records show that both prior
applications were filed in 1997).
32. See Hood, 211 S.W.3d at 780 (outlining Robertson's procedural history and
indicating that Robertson raised his claim on direct and appeal and his initial habeas
application); Ex parte Buntion, No. WR-22,548-02 (Tex. Crim. App. Nov. 5, 2003) (not
designated for publication) (internal court records indicate that Buntion raised his claim on
direct appeal and in his initial habeas application); Ex parte Jones, No. 2009 WL 1636511
at *3 (summarizing State's allegations and noting that Jones did not raise his claim on direct
appeal or in his initial application); Rachal v. State, 917 S.W.2d 799 (Tex. Crim. App. 1996)
(claim not raised on direct appeal); Ex parte Rachal, WR-60,394-01 (Tex. Crim. App. Mar.
23, 2005) (not designated for publication) (claim not raised in initial habeas application); Ex
parte Davis, No. AP-76,263, 2009 WL 3839065 at *4 n.26 (Tex. Crim. App. Nov. 18, 2009)
(Keller, P.J. dissenting) (not designated for publication) (referring to trial court's findings).