IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-16,556-05






EX PARTE KENNETH WAYNE THOMAS, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS 


IN CAUSE NO. F-86-85539 IN THE 194TH JUDICIAL DISTRICT COURT


FROM DALLAS COUNTY






 Cochran, J., filed a statement dissenting from the Court's per curiam order,
in which Price, Johnson, and Holcomb, JJ., joined.



DISSENTING STATEMENT



 I respectfully dissent to the Court's order summarily denying applicant relief on his
Penry claim. Everyone agrees that this subsequent application for a writ of habeas corpus
satisfies the requirements of Article 11.071, § 5. Thus, we should remand this case to the
trial court for further development of the merits as we have done with our other recent post-Tennard writ applications. (1) 

 Similarly situated litigants should be treated similarly. (2) Instead, the per curiam order
simply announces the following:

 This court has reviewed the record with respect to the allegation made by
applicant. The mitigating evidence presented by applicant does not rise to the
level of the sort of evidence that this Court has said is not encompassed within
the previous statutory special issues.


This is an opaque decree from Delphi. We do not need to describe that evidence, address that
evidence, compare that evidence to the evidence in cases in which relief was granted or to
those in which relief was not granted. We need not utter a single word of explanation to the
applicant or to the Texas and federal bench and bar. Ipse dixit on this federal constitutional
question is good enough to uphold this death sentence in our Court. I respectfully disagree.

 Additionally, the Court's per curiam order raises more questions than it answers. 
What, exactly, is "the level" and "the sort" of evidence that is not encompassed within the
special statutory issues? What is the standard by which we divine that "sort" and "level"? 
How are applicants, attorneys, and trial judges supposed to know "the level" and "the sort"
of Penry evidence that merits relief? We should at least set out, in a published opinion, the
standard that we shall use in evaluating the threshold sufficiency of the Penry evidence that
must be alleged in a subsequent writ before the applicant is entitled to have his application
remanded to the trial court for further development.

 I do not yet know whether the evidence that applicant sets out in his subsequent writ
application is sufficient to justify relief under the post-Tennard line of cases. But I do know
that he deserves to have this evidence considered by the habeas court after it has been
assessed and countered by the State. The applicant alleges that the mitigating evidence
admitted at his 1987 trial includes the following from his testifying psychiatrist:


 Applicant is "borderline retarded" with I.Q. scores of 75 and 77;


 


 "[I]n essence, he's mentally retarded, can't learn as well, can't think as well,
can't reason things through";

 Applicant suffers from "organic affective syndrome," a form of mental illness;

 Applicant also experiences delusions, including a belief that angels and God
had spoken to him and directed him on specific missions;

 Applicant suffered from "early toxic exposures" in utero from cigarettes and
possibly alcohol;

 When he was born in the back seat of a car, the umbilical cord was wrapped
around his neck;

 He suffered from "significant developmental delay," and was unable to walk
until he was two years old;

 When he was young, he complained of a "great many headaches" and told his
mother he felt "something crawling around in his abdomen," which suggested 
possible brain damage;

 When applicant was sixteen, he was pistol-whipped at a park where he
worked; as a result, he suffered an injury over the right frontal area of his
brain; a contemporaneous EEG revealed "signs of irreversible brain damage";

 All of applicant's later assaultive activity occurred after this head injury;

 Applicant's mental illness might be partially addressed through medication,
but his "reduced impulse control stemming from his impairments" make him
more likely to commit violent acts.



 This evidence may not ultimately be sufficient to entitle applicant to relief under the
post-Tennard line of Penry cases, but it is not so facially meritless and lacking in plausibility
and probative value that it should be cavalierly dismissed either. Ours is an adversarial
process and the sufficiency of this evidence should be tested within that process. The State
should have an opportunity to check the trial record and correct any misstatements or
misunderstandings of these factual allegations. Both sides should have an opportunity to
muster legal precedent in favor of or against granting relief under the most recent federal and
state decisions. The habeas judge should have an opportunity to review the trial evidence,
as well as the closing arguments, (3) to make his "Johnny-on-the-spot" assessment of the
probative value and strength of applicant's evidence and to make a recommendation to this
Court. This has been the normal procedure in our treatment of post-Tennard subsequent
writs. I do not understand why the Court does not follow its normal procedure in this case. 
Or is this the beginning of a whole new era of opaque Delphic denials in post-Tennard writ
applications in our state court?


Filed: March 31, 2010

Do Not Publish
1. See Ex parte Hood, ___ S.W.3d __, No. AP-75,370, 2010 WL 625052 (Tex. Crim. App.
Feb. 24, 2010); Ex parte Moreno, 245 S.W.3d 419, 429-31 (Tex. Crim. App. 2008); Ex parte
Martinez, 233 S.W.3d 319, 323 (Tex. Crim. App. 2007); Ex parte Davis, No. AP-76,263, 2009
WL 3839065 (Tex. Crim. App. Nov. 18, 2009) (per curiam) (not designated for publication); Ex
parte Buntion, No. AP-76,236, 2009 WL 3154909 (Tex. Crim. App. Sept. 30, 2009) (per
curiam); Ex parte Rachal, No. WR-60,394-02, 2009 WL 3042631 (Tex. Crim. App. Sept. 23,
2009) (per curiam) (not designated for publication) (remanding subsequent writ application for
determination of the merits of Penry claim because requirements of art. 11.071, § 5 were met);
Ex parte Kim Ly Lim, No. WR-56,297-01, 2008 WL 2391119 (Tex. Crim. App. June 4, 2008)
(per curiam) (not designated for publication) (remanding subsequent writ containing Penry claim
to habeas court; "Upon reviewing the subsequent application, and in light of intervening United
States Supreme Court decisions, this Court has determined that Applicant's third claim
concerning the nullification instruction given at the punishment stage of his trial should not have
been dismissed as an abuse of the writ but remanded to the trial court for its consideration."); Ex
parte Hathorn, No. AP-75,917, 2008 WL 2058677 (Tex. Crim. App. May 14, 2008) (per curiam)
(not designated for publication) (reconsidering applicant's previously dismissed Penry claim); Ex
parte Robertson, No. AP-74,720, 2008 WL 748373 (Tex. Crim. App. March 12, 2008) (per
curiam) (not designated for publication).
2. Even when we denied relief in a post-Tennard Penry case, we did so only after the
subsequent writ had first been remanded to the trial court for development of the merits. Ex
parte Jones, No. AP-75,896, 2009 WL 1636511 (Tex. Crim. App. June 10, 2009) (not designated
for publication) (relying on post-Tennard Texas cases to remand subsequent writ application to
the trial court to address the merits of a Penry claim, but denying relief after remand because
applicant's mitigating evidence could be fully addressed under the scope of the former special
issues). In that case, we distinguished several of our recent cases granting relief under the post-Tennard Penry cases and explained,

 In each of these cases, the mitigating evidence that was held to be outside the
scope of the special issues differs significantly from applicant's mitigating
evidence. We are unconvinced that applicant's proffered mitigating evidence was
outside the scope of the special issues. Applicant did not show evidence of a
seriously troubled childhood. Rather, evidence showed that he had a stable family
background and was raised in a cohesive two-parent household, albeit not by his
biological father, who abandoned him. There was no evidence of learning
disabilities, low IQ, or neurological damage. Rather, there was testimony about
applicant's intelligence. There was no testimony that he abused substances. 
Although applicant presented evidence that he suffers from psychological
irregularities or deficits, including what his psychologist expert witness described
as "empty vessel syndrome," which made him susceptible to being influenced by
others, such evidence is a far-cry from the sort of psychological mitigation
evidence that has been determined to be Penry evidence. Further, the facts of the
offense rebut that assessment as to the offense charged; applicant shot a police
officer during a traffic stop, without provocation or urging of armed violence by
his companion. The testimony as to his youth and redeeming character traits is
the sort that the Supreme Court has held to fall within the scope of the special
issues.

Id. at *7.
3. Applicant asserts that the State's closing argument repeatedly urged the jurors to focus
solely upon the two special issues of "deliberateness" and "future danger" without regard to the
resulting sentence. Because this case was tried before Penry I, there was no instruction
concerning mitigating evidence or any role such evidence-especially "two-edged sword
evidence," such as mental illness, that may reduce a person's moral culpability but increase the
likelihood of future dangerousness-might play. Evidence of intellectual disabilities and mental
illness is "classic" Penry evidence that cannot normally be considered within the confines of the
former two special issues.