

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-76,334

**EX PARTE DAVID LEON LEWIS, Applicant**

## ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. CR-13160-AAAA IN THE 217TH JUDICIAL DISTRICT COURT ANGELINA COUNTY

*Per Curiam.* KELLER, P.J., not participating.

## O P I N I O N

In April 1987, a jury convicted applicant of the offense of capital murder. The jury answered the special issues submitted pursuant to Texas Code of Criminal Procedure article 37.071, and the trial court, accordingly, set punishment at death. Because some of the reporter's notes from the trial were lost, this Court reversed the conviction. *Lewis v. State*, 844 S.W.2d 750 (Tex. Crim. App. 1993). On retrial in June 1993, applicant pleaded guilty to the offense of capital murder. A second jury answered the special issues, and the trial

court, accordingly, set punishment at death. This Court affirmed. *Lewis v. State*, 911 S.W.2d 1 (Tex. Crim. App. 1995).

Applicant filed his initial application for a writ of habeas corpus with the convicting court on December 1, 1997. This Court denied relief. *Ex parte Lewis*, WR-38,355-01 (Tex. Crim. App. Feb. 3, 1999). On February 10, 1999, applicant filed a second application for a writ of habeas corpus, which this Court dismissed as subsequent. *Ex parte Lewis*, WR-38,355-02 (Tex. Crim. App. April 21, 1999). Applicant filed a third application for a writ of habeas corpus on June 20, 2003, alleging mental retardation claims. That application was remanded to the trial court for a hearing, and subsequently relief was denied. *Ex parte Lewis*, WR-38,355-03 (Tex. Crim. App. Dec. 6, 2006).

In a single allegation in this subsequent application, applicant alleges that he is entitled to relief from his death sentence because he presented significant mitigating evidence related to his moral culpability and the appropriateness of a death sentence which could not have been given full effect by the sentencing jury. *See Penry v. Johnson ("Penry II")*, 532 U.S. 782 (2001). This Court has reviewed the application and determined that the it satisfies the requirements of Article 11.071 § 5.

The jury in applicant's retrial was given the following nullification instruction:

> You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence presented in both phases of trial, whether presented by the State or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background, record, or circumstances of the crime which you believe could make a death sentence

> inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, and thereafter, give effect and consideration to them in assessing the defendant's personal culpability, at the time you answer the special issue. If you determine, when giving effect to the mitigation evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, then a negative finding should be given to one of the special issues, regardless of what the jury found the answers to the special issue should be.

The nullification instruction given to applicant's jury is nearly identical to the instruction that was at issue in *Penry II*. *See Penry*, 532 U.S. at 790 ("If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, a negative finding should be given to one of the special issues.").

The mitigating evidence presented by applicant is the sort of evidence that this Court has said is not encompassed within the previous statutory special issues. The jury was presented with evidence that applicant's mother left home and had applicant at a young age. She lived with applicant's father for only four years of their seven year marriage. Because she had suffered sexual abuse from her father, applicant's delivery was very difficult, and labor lasted 72 hours. Applicant was forcibly removed from the womb, and during that procedure, his eyes were damaged. This damage led to him being made fun of by schoolmates later in his childhood. Applicant's mother speculated that he also suffered brain damage because applicant developed more slowly than other babies. He did not begin

speaking until he was nearly two years old, and he took much longer than other children to learn to crawl and walk.

Around the age of four or five, Applicant was exposed to his parents fighting "all the time." Applicant's mother admitted that she "was a very abusive parent." She testified that she cursed and belittled applicant and that she beat him, giving the example of at times "knock[ing] him clear across the room" and "slapping him so hard he couldn't even hardly walk."

When applicant was six or seven years old, his mother worked two jobs, leaving him unsupervised in their apartment. Applicant began first grade when he was six, however he did not do well and was not able to keep up with his class. His mother was told that he was "mentally retarded" and needed special ed classes, but those classes did not seem to help applicant much. Applicant remained behind several grade levels in school. School records categorized Applicant as "mentally deficient" at age eleven. His scores on IQ tests were "borderline." In testing done in preparation for trial, applicant's IQ test result was 75.

When Applicant was ten years old, Applicant's mother began dating. By the time Applicant was fifteen, his mother had lived with five men and married three others, none of whom were positive role models for applicant. As a teenager, applicant began skipping school and getting into trouble. His mother's response was to "mostly [get] mad [and] beat the hell out of him." Applicant ran away from home several times. He abused alcohol and drugs with his mother as early as age thirteen. His mother sent him to live with his uncle

when he was fifteen. His uncle was an abusive alcoholic who would "raise hell, cuss, carry on, brag about stuff that he had done, robbing and stuff." This evidence is that type of evidence for which the jury did not have a vehicle to give meaningful consideration. *See Ex parte Martinez*, 233 S.W.3d 319, 320 (Tex. Crim. App. 2007) (multiple hospitalizations in state psychiatric facilities, abuse of alcohol at a young age, troubled childhood); *see also Ex parte Moreno*, 245 S.W.3d 419, 422 (Tex. Crim. App. 2008) (troubled childhood).

The nullification instruction given to applicant's jury was not a sufficient vehicle to allow jurors to give meaningful effect to the mitigating evidence presented by applicant. Because the mitigating evidence presented at applicant's trial is the type of evidence for which he was entitled to a separate vehicle for consideration, we remand the case to the trial court for a new punishment hearing.

Delivered: April 28, 2010
Do Not Publish