IN THE COURT OF CRIMINAL APPEALS
OF TEXAS
 


NO. AP-76,334




EX PARTE DAVID LEON LEWIS, Applicant




ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE
NO. CR-13160-AAAA IN THE 217TH JUDICIAL DISTRICT COURT
ANGELINA COUNTY




           Per Curiam. Keller, p.j., not participating.

O P I N I O N

           In April 1987, a jury convicted applicant of the offense of capital murder. The jury
answered the special issues submitted pursuant to Texas Code of Criminal Procedure article
37.071, and the trial court, accordingly, set punishment at death. Because some of the
reporter’s notes from the trial were lost, this Court reversed the conviction. Lewis v. State,
844 S.W.2d 750 (Tex. Crim. App. 1993). On retrial in June 1993, applicant pleaded guilty
to the offense of capital murder. A second jury answered the special issues, and the trial
court, accordingly, set punishment at death. This Court affirmed. Lewis v. State, 911 S.W.2d
1 (Tex. Crim. App. 1995). 
           Applicant filed his initial application for a writ of habeas corpus with the convicting
court on December 1, 1997. This Court denied relief. Ex parte Lewis, WR-38,355-01 (Tex.
Crim. App. Feb. 3, 1999). On February 10, 1999, applicant filed a second application for a
writ of habeas corpus, which this Court dismissed as subsequent. Ex parte Lewis, WR-38,355-02 (Tex. Crim. App. April 21, 1999). Applicant filed a third application for a writ
of habeas corpus on June 20, 2003, alleging mental retardation claims. That application was
remanded to the trial court for a hearing, and subsequently relief was denied. Ex parte Lewis,
WR-38,355-03 (Tex. Crim. App. Dec. 6, 2006).
           In a single allegation in this subsequent application, applicant alleges that he is
entitled to relief from his death sentence because he presented significant mitigating evidence
related to his moral culpability and the appropriateness of a death sentence which could not
have been given full effect by the sentencing jury. See Penry v. Johnson (“Penry II”), 532
U.S. 782 (2001). This Court has reviewed the application and determined that the it satisfies
the requirements of Article 11.071 § 5.
           The jury in applicant’s retrial was given the following nullification instruction:
You are instructed that when you deliberate on the questions posed in the
special issues, you are to consider all relevant mitigating circumstances, if any,
supported by the evidence presented in both phases of trial, whether presented
by the State or the defendant. A mitigating circumstance may include, but is
not limited to, any aspect of the defendant’s character, background, record, or
circumstances of the crime which you believe could make a death sentence
inappropriate in this case. If you find that there are any mitigating
circumstances in this case, you must decide how much weight they deserve,
and thereafter, give effect and consideration to them in assessing the
defendant’s personal culpability, at the time you answer the special issue. If
you determine, when giving effect to the mitigation evidence, if any, that a life
sentence, as reflected by a negative finding to the issue under consideration,
rather than a death sentence, is an appropriate response to the personal
culpability of the defendant, then a negative finding should be given to one of
the special issues, regardless of what the jury found the answers to the special
issue should be.

The nullification instruction given to applicant’s jury is nearly identical to the instruction that
was at issue in Penry II. See Penry, 532 U.S. at 790 (“If you determine, when giving effect
to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to
the issue under consideration, rather than a death sentence, is an appropriate response to the
personal culpability of the defendant, a negative finding should be given to one of the special
issues.”).
           The mitigating evidence presented by applicant is the sort of evidence that this Court
has said is not encompassed within the previous statutory special issues. The jury was
presented with evidence that applicant’s mother left home and had applicant at a young age. 
She lived with applicant’s father for only four years of their seven year marriage. Because
she had suffered sexual abuse from her father, applicant’s delivery was very difficult, and
labor lasted 72 hours. Applicant was forcibly removed from the womb, and during that
procedure, his eyes were damaged. This damage led to him being made fun of by
schoolmates later in his childhood. Applicant’s mother speculated that he also suffered brain
damage because applicant developed more slowly than other babies. He did not begin
speaking until he was nearly two years old, and he took much longer than other children to
learn to crawl and walk. 
           Around the age of four or five, Applicant was exposed to his parents fighting “all the
time.” Applicant’s mother admitted that she “was a very abusive parent.” She testified that
she cursed and belittled applicant and that she beat him, giving the example of at times
“knock[ing] him clear across the room” and “slapping him so hard he couldn’t even hardly
walk.”
           When applicant was six or seven years old, his mother worked two jobs, leaving him
unsupervised in their apartment. Applicant began first grade when he was six, however he
did not do well and was not able to keep up with his class. His mother was told that he was
“mentally retarded” and needed special ed classes, but those classes did not seem to help
applicant much. Applicant remained behind several grade levels in school. School records
categorized Applicant as “mentally deficient” at age eleven. His scores on IQ tests were
“borderline.” In testing done in preparation for trial, applicant’s IQ test result was 75.
           When Applicant was ten years old, Applicant’s mother began dating. By the time
Applicant was fifteen, his mother had lived with five men and married three others, none of
whom were positive role models for applicant. As a teenager, applicant began skipping
school and getting into trouble. His mother’s response was to “mostly [get] mad [and] beat
the hell out of him.” Applicant ran away from home several times. He abused alcohol and
drugs with his mother as early as age thirteen. His mother sent him to live with his uncle
when he was fifteen. His uncle was an abusive alcoholic who would “raise hell, cuss, carry
on, brag about stuff that he had done, robbing and stuff.” This evidence is that type of
evidence for which the jury did not have a vehicle to give meaningful consideration. See Ex
parte Martinez, 233 S.W.3d 319, 320 (Tex. Crim. App. 2007) (multiple hospitalizations in
state psychiatric facilities, abuse of alcohol at a young age, troubled childhood); see also Ex
parte Moreno, 245 S.W.3d 419, 422 (Tex. Crim. App. 2008) (troubled childhood).
           The nullification instruction given to applicant’s jury was not a sufficient vehicle to
allow jurors to give meaningful effect to the mitigating evidence presented by applicant. 
Because the mitigating evidence presented at applicant’s trial is the type of evidence for
which he was entitled to a separate vehicle for consideration, we remand the case to the trial
court for a new punishment hearing.
Delivered: April 28, 2010
Do Not Publish