

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-76,405

### EX PARTE KENNETH WAYNE THOMAS

### ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. F-86-85539 IN THE 194TH JUDICIAL DISTRICT COURT DALLAS COUNTY

*Per Curiam*.

## O P I N I O N

On September 2, 1987, a jury convicted applicant of the offense of capital murder. The jury answered the special issues submitted pursuant to Texas Code of Criminal Procedure Article 37.071, and the trial court, accordingly, set punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Thomas v. State*, No. AP-69,938 (Tex. Crim. App. June 8, 1994). On May 13, 1997, applicant filed his initial application for a writ of habeas corpus pursuant to Article 11.071. We denied relief. *Ex parte Thomas*, No. AP-73,251 (Tex. Crim. App. Oct. 20, 1999).

On October 5, 2009, applicant filed this subsequent application with the trial court. In a single allegation, applicant alleged that he is entitled to relief from his death sentence because he presented significant mitigating evidence related to his moral culpability and the appropriateness of a death sentence which could not have been given full effect by the sentencing jury. *See Penry v. Johnson ("Penry I")*, 492 U.S. 302 (1989). In an order dated March 31, 2010, this Court denied relief after finding that applicant's claim satisfied the requirement of Article 11.071 §5. *Ex parte Thomas*, No. WR-16,556-05 (Tex. Crim. App. March 31, 2010). In light of this Court's subsequent decision in *Ex parte Smith*, 309 S.W.3d 53 (Tex. Crim. App. 2010), we reconsidered our decision and remanded the application to the habeas court for consideration of the merits of applicant's claim. The habeas court did not hold a hearing, but did enter findings of fact and conclusions of law.

Reviewing the case after remand, the record shows that the mitigating evidence presented by applicant is the sort of evidence that this Court has said is not encompassed within the previous statutory special issues. *See Smith*, 309 S.W.3d; *Ex parte Moreno*, 245 S.W.3d 419 (Tex. Crim. App. 2008); *Ex parte Martinez*, 233 S.W.3d 319 (Tex. Crim. App. 2007). Applicant presented mitigating evidence at the punishment phase of trial tending to establish that he had limited intellectual ability, suffered from mental illness and brain damage, and had been victimized as a teenager in a violent assault. The evidence was presented through the testimony of Jay Douglas Crowder, M.D., a psychiatrist.

Dr. Crowder testified that applicant had scored 75 and 77 on IQ tests, and that those scores would place applicant in the bottom 6% of the population in terms of intelligence. Based on these test results, Dr. Crowder described applicant as "borderline retarded," and he informed the jury that applicant could not "learn as well," "think as well," or "reason through things as well" as a person with comparable intellectual limitations. Applicant's spelling and math skills, as measured by tests taken around the time of trial, were below that of a typical third grader.

Dr. Crowder additionally testified that applicant suffered from organic affective syndrome, an abnormal state of mood that is a form of mental illness. Dr. Crowder based this diagnosis in part on the fact that applicant had experienced delusions, including the belief that angels and God had spoken to him and had directed him on specific missions.

According to Dr. Crowder, applicant's impairments may have been traceable in part to early toxic exposures, such as exposure to cigarette smoke and possibly alcohol *in utero*, as well as trauma at birth. Applicant was born in the back seat of a car, and his umbilical cord was wrapped around his neck during his birth. Applicant showed significant developmental delay, as reflected in the fact that he was unable to walk until he was two years old. As a child, applicant complained of a great many headaches and told his mother he felt something "crawling around in his abdomen." Dr. Crowder interpreted these facts to suggest that applicant suffered from brain damage.

Dr. Crowder also testified to the consequences of an assault committed against applicant when he was 16, in which applicant was pistol-whipped at a park where he worked. Applicant's medical records indicated that he suffered an injury over the right frontal area of his brain, which caused him to be disoriented and not to recognize his mother or his girlfriend. Dr. Crowder testified that the disorientation described in the medical records indicated that applicant suffered a significant head injury in the assault. An electroencephalogram test (EEG) following the assault revealed abnormal electrical activities in the frontal part of applicant's brain. Dr. Crowder characterized these results as signs of irreversible brain damage. An EEG and a computed tomography (CT) scan conducted by Dr. Crowder in anticipation of trial revealed no abnormality. Dr. Crowder also testified regarding other tests of applicant's general neuropsychological functioning, and indicated that applicant had scored "within the brain damaged range" on "90% of the tests that were administered."

Dr. Crowder indicated that the injury applicant sustained during the assault compounded his cognitive limitations, because "people who are already impaired at birth or later, if they have head injuries that adds on to that [sic], that makes the situation much worse." Dr. Crowder noted that some of applicant's serious assaultive conduct, including this offense, occurred after the pistol-whipping he received at age 16.

Finally, Dr. Crowder testified that while medication could make applicant substantially less likely to constitute a continuing danger to society, the mental impairments

increased the likelihood of applicant's future dangerousness. On cross examination, Dr. Crowder acknowledged that applicant's reduced impulse control, rooted in his mental impairments, made him more likely to commit violent acts such as "killing folks and stealing."

The habeas court concluded that the former statutory special issues did not provide applicant's jury with an adequate mechanism for exercising its reasoned moral judgment concerning whether applicant's mitigating evidence of low intelligence, brain damage, and mental illness warranted the imposition of a life sentence rather than the penalty of death. Based on the forgoing, the habeas court recommended that this Court vacate the punishment portion of the trial court's judgment and remand the case for a new punishment hearing.

This Court has reviewed the record with respect to the allegation made by applicant. Based on the habeas court's findings and conclusions and our own review, and because the mitigating evidence presented at applicant's trial is the type of evidence for which he was entitled to a separate vehicle for consideration, relief is granted. We vacate applicant's sentence and remand the case to the trial court for a new punishment hearing.

Delivered: August 25, 2010

Do Not Publish