

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,593

**EX PARTE KIM LY LIM, Applicant**

## ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. 599621-B IN THE 262ND JUDICIAL DISTRICT COURT HARRIS COUNTY

*Per Curiam. Meyers, J., dissents.*

## O P I N I O N

In March 1992, a jury convicted applicant of capital murder for an offense committed

in May 1991. The jury answered the special issues submitted pursuant to Texas Code of

Criminal Procedure article 37.071, and the trial court, accordingly, set punishment at death.

This Court affirmed the conviction and sentence. *Lim v. State*, No. AP-71,476 (Tex. Crim.

App. Feb. 8, 1995).

Applicant filed his initial application for a writ of habeas corpus with the convicting

court on June 8, 1997. On June 23, 2003, applicant filed a subsequent application for a writ

of habeas corpus, raising three claims, one of which alleged mental retardation. The subsequent application was remanded to the trial court for a hearing on the mental retardation claim. In the same order, we also dismissed applicant's remaining claims as barred by Section 5. This Court later determined that applicant's third claim, a *Penry*[1] claim, met the requirements of Section 5 and had been improperly dismissed. The subsequent application was remanded to the trial court a second time for consideration of applicant's *Penry* claim.

Applicant alleges that he is entitled to relief from his death sentence because he presented significant mitigating evidence related to his moral culpability and the appropriateness of a death sentence which could not have been given full effect by the sentencing jury. *See Penry II*, 532 U.S. 782.

The jury in applicant's trial received the following special issues:

a. Was the conduct of the defendant, [applicant], which caused the death of the deceased, [victim], committed deliberately and with the reasonable expectation that the death of the deceased would result?

b. Is there a probability that the defendant, [applicant], would commit criminal acts of violence that would constitute a continuing threat to society?

The jury also received the following supplemental instruction:

When you deliberate about the questions posed in the Special issues, you are to consider any mitigating circumstances supported by the evidence presented in both phases of the trial. A mitigating circumstance may be any aspect of the defendant's character and record or circumstances of the crime which you believe makes a sentence of death inappropriate in this case. If you find there are any mitigating circumstances, you must decide how much weight they deserve and give them effect when you answer the Special Issues. If you

---

[1] *Penry v. Johnson ("Penry II")*, 532 U.S. 782 (2001).

determine, in consideration of this evidence, that a life sentence, rather than a death sentence, is an appropriate response to the personal moral culpability of the defendant, you are instructed to answer at least one of the Special Issues under consideration, "No."

The nullification instruction given to applicant's jury is very similar to the instruction that was at issue in *Penry II*. *See Penry II*, 532 U.S. at 790 ("If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, a negative finding should be given to one of the special issues.")

The mitigating evidence presented by applicant is the sort of evidence that the United States Supreme Court has said is not encompassed within the previous statutory special issues. The jury was presented with evidence that applicant was born in Cambodia into a family that eventually numbered 12 children. His mother gave birth to him in an outhouse. Because of the circumstances of his birth, he was abused and neglected by his father, who was a police officer in the "old regime" that existed in Cambodia prior to the ascendency of the communist Khmer Rouge government. Applicant was beaten often by members of the Khmer Rouge government in an effort to obtain information about his father. His family fled Cambodia to Thailand in 1979, where they lived in an internment camp under conditions of extreme privation.

In 1981, applicant's family immigrated to the United States. Applicant's parents divorced, and applicant was left to largely fend for himself as an adolescent. School records showed that applicant had low intelligence and poor school performance, but he was never placed in special education classes. Psychologist Dr. Walter Quijano testified that applicant has a learning disability. Hospital records showed that applicant was admitted to a California hospital as an adolescent with an initial diagnosis of major depression. He was released with a diagnosis of adjustment disorder with depressed mood.

The evidence presented by applicant is that type of evidence for which the jury did not have a vehicle to give meaningful consideration. *See Ex parte Smith*, 309 S.W.3d 53 (Tex. Crim. App. 2010) (life of poverty in a crime-ridden neighborhood and severe drug addiction); *Ex parte Martinez*, 233 S.W.3d 319, 320 (Tex. Crim. App. 2007) (hospitalization in state psychiatric facilities, abuse of alcohol at a young age, and troubled childhood); *see also Ex parte Moreno*, 245 S.W.3d 419, 422 (Tex. Crim. App. 2008) (troubled childhood).

The nullification instruction given to applicant's jury was not a sufficient vehicle to allow jurors to give meaningful effect to the mitigating evidence presented by applicant. Because the mitigating evidence presented at applicant's trial is the type of evidence for which he was entitled to a separate vehicle for consideration, we remand the case to the trial court for a new punishment hearing.

As to the mental retardation issue, the trial court's findings are supported by the lengthy record, and the trial court's conclusion that applicant is not mentally retarded is

likewise supported. This Court adopts the trial court's findings regarding the mental retardation issue as its own and denies relief.

Delivered: June 29, 2011
Do Not Publish